CHAMBER OF COMMERCE OF the
UNITED STATES OF AMERICA et
al., Appellants,

v.

UNITED STATES DEPARTMENT
OF ENERGY et al.

No. 79–1213.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 28, 1980.

Decided Feb. 28, 1980.

Stanley T. Kaleczyc, Washington, D. C., with whom William L. Kovacs was on the brief, for appellants.

Mary A. McReynolds, Atty. Dept. of Justice, Washington, D. C., with whom Carl S. Rauh,* U. S. Atty., Barbara L. Herwig, Atty. Dept. of Justice, Washington, D. C., and Henry A. Gill, Jr., Dept. of Energy, Washington, D. C., were on the brief, for appellees.

Thomas R. Trowbridge, III was on the brief, for amicus curiae urging reversal and remanding for further proceedings.

James L. Feldesman, Washington, D. C., entered an appearance for appellee, Energy Policy Task Force.

Before WRIGHT, Chief Judge, and McGOWAN and MIKVA, Circuit Judges.

Opinion *per curiam.*

---

* United States Attorney at the time the brief was filed.

PER CURIAM:

This suit was prompted by a decision of the United States Department of Energy (DOE) to provide funds to a consumer-oriented organization so that organization might intervene in one of DOE's regulatory proceedings. Appellants brought this suit in the United States District Court challenging the lawfulness of that action, and seeking injunctive and declaratory relief. The district court dismissed this action on the grounds that the completion of the challenged departmental proceeding had made the case moot. Although we view the mootness question somewhat differently than did the district court, we affirm the lower court's order.

I

The events on which this suit is based began on January 20, 1978, when DOE issued a formal notice that it was adopting a monitoring program for No. 2 heating oil (home heating oil). 43 Fed.Reg. 2917 (1978). The program was to collect pricing and distribution information for the purpose of determining whether further regulatory action was necessary. An evidentiary hearing to evaluate the data collected was scheduled for August 1978, after which recommendations would be made. "In order to ensure that consumer interests [would be] adequately represented at the evidentiary hearing," DOE invited "any non-profit organization whose principal function involves the furtherance of consumer interests" to apply for funding to pay for its intervention in the proposed hearing. Id. at 2921. The Energy Policy Task Force of the Consumer Federation of America (EPTF) applied for that funding and petitioned to intervene in the 1978 hearing. Both were granted.

Six days before the August hearing was scheduled to begin, the appellants brought this suit on the grounds that DOE's ad hoc

funding of EPTF was unlawful. The appellants' complaint, which asked for an injunction and declaratory judgment, was accompanied by an application for a temporary restraining order. That application was denied, and DOE's hearing took place as scheduled.

While this suit was pending, the dispute clearly became much less lively than it had been when the case began. At the time of the district court's dismissal order, the August hearing had been completed. Based on the evidence presented there, DOE's Office of Hearings and Appeals had issued its report. United States Department of Energy Office of Hearings and Appeals, Decision and Recommendations—No. 2 (Home) Heating Oil (1978) [hereinafter cited as OHA Decision]. There had also been full participation in the proceedings by EPTF, which had been paid, or was about to be paid, all it was due.[1] In these circumstances, the district court dismissed the case as moot.

Appellants offer here, as they offered to the district court, essentially two reasons why their case is not moot. First, appellants argue that the harm resulting from the alleged illegality is a continuing one. Specifically, they allege that the evidence submitted by EPTF at the 1978 hearing "taint[s]" subsequent proceedings of DOE and "*may* affect the final DOE decision on whether to regulate the price of No. 2 (Home) heating oil." Brief for the Appellants at 28–29 (emphasis added). It should be noted in this regard that EPTF's recommendation for price controls was rejected in the OHA Decision and that continued study was recommended instead. OHA Decision at 42, 132. The focus of those new proceedings was on improving the price monitoring method, not on the reimposition of price controls. 44 Fed.Reg. 52860 (1979); 44 Fed. Reg. 43761 (1979). Nothing in the record

---

1. On November 8, 1979, there was a supplemental payment authorized to EPTF (then operating as the Consumer Energy Council of America) for its participation in the August 1978 hearing. 44 Fed.Reg. 64972 (1979). Counsel for the appellees explained at oral ar-

gument that this authorization represented an upward adjustment for services previously rendered. It appears that as of today, all moneys requested by EPTF for its 1978 intervention have been authorized and disbursed.

suggests that the reimposition of price controls on home heating oil is now being considered by DOE.

Appellants' second argument is that DOE's practice of intervenor funding—a practice appellants claim to be unlawful—is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).[2] The district court rejected this claim, concluding that in any future decision on ad hoc intervenor funding, DOE would not "proceed to final action so as to make judicial review and relief untimely." *Chamber of Commerce v. United States Department of Energy,* No. 78–1543, mem. opinion at 2 (D.D.C. Dec. 19, 1978). The district court noted also that DOE was initiating a rulemaking proceeding for a formalized intervenor funding program and that the appellants would have ample opportunity to initiate judicial review should rules be promulgated. *Id.* at 2–3.

Since the decision of the district court, Congress has imposed a moratorium on intervenor funding in certain of DOE's appropriations. Pub.L. No. 96–69, § 103, 93 Stat. 437, 441 (1979); Pub.L. No. 96–126, 93 Stat. 954, 972 (1979). In addition, DOE has decided to stay further action on its intervenor funding regulations pending prior congressional approval. 44 Fed.Reg. 65278 (1979).[3]

## II

The doctrine of mootness has two distinct branches. In its most basic sense, mootness concerns the jurisdictional limitations of Article III of the Constitution. According to that constitutional mandate, the existence of a "case or controversy" is a prerequisite for the exercise of federal judicial power; if a case is truly moot, the federal court is without the power to resolve the dispute. *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974). The cousin of the mootness doctrine, in its strict Article III sense, is a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration. *See* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533 at 266–70 (1975). Unlike Article III mootness, these doctrines address not the power to grant relief but the court's discretion in the exercise of that power. In some circumstances, a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant. *Cf. Warth v. Seldin,* 422 U.S. 490, 498–500, 95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343 (1975).

This distinction between mootness proper and its remedial counterpart has been long recognized and clearly articulated. In *United States v. W.T. Grant Co.,* 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953), the United States had brought an antitrust suit alleging the existence of interlocking corporate directorates. Before trial, certain board members resigned, disentangling the interlocks. On defendants' motion, the district court dismissed the action as moot. Although affirming the judgment of the district court, the Supreme Court viewed the case in a different light:

> Both sides agree to the abstract proposition that voluntary cessation of alleged-

---

**2.** The application of the *Southern Pacific* doctrine to this case must be carefully defined. This suit was not prosecuted as a class action, nor did it challenge any practice of DOE. Rather, it was a suit commenced by three named plaintiffs challenging a particular act of DOE. The *Southern Pacific* doctrine requires that there be "a *reasonable expectation* that the *same complaining party* would be subjected to the *same action* again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975) (emphasis added). Therefore, unless there is a "demonstrated probability" that DOE will again fund a consumer-ori-

ented intervenor in its continuing home heating oil proceedings, the *Southern Pacific* doctrine does not apply. *Id.*

**3.** Appellants also argue that the district court was so prejudiced against their complaint that they were denied a fair hearing. We find that allegation wholly without merit, and we dismiss it summarily. The appellees put forward, as an alternative ground for dismissing this action, that the appellants lack standing. Due to our disposition of the mootness question, we do not address this issue.

ly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e.*, does not make the case moot. . . . For to say that the case has become moot means that the defendant is entitled to a dismissal as a matter of right . . . .

The case may nevertheless be moot if the defendant can demonstrate that "there is no reasonable expectation that the wrong will be repeated." The burden is a heavy one. Here the defendants told the court that the interlocks no longer existed and disclaimed any intention to revive them. Such a profession does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts.

Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct. . . . But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.

. . . . .

We conclude that, although the actions were not moot, no abuse of discretion has been demonstrated in the trial court's refusal to award injunctive relief.

345 U.S. at 632–33, 635–36, 73 S.Ct. at 897–899 (footnotes and citations omitted). *Accord, United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203–04, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968).

The same principles apply when a declaratory judgment rather than an injunction is sought. *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961). As the Supreme Court noted in the *Mechling Barge* case:

Declaratory judgment is a remedy committed to judicial discretion. Nor need this Court first have the view of a lower court before it may decide that such discretion ought not to be exercised. . . .

We think that sound discretion withholds the remedy where it appears that a challenged "continuing practice" [of an administrative agency] is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted.

*Id.* at 331, 82 S.Ct. at 342 (citation omitted).

It seems clear to us that the case on appeal falls squarely into the pattern of *W.T. Grant* and *Mechling Barge*. The precise conduct that prompted this suit—EPTF's subsidized participation in the 1978 hearing—has come to an end. The allegedly unlawful departmental practice—intervenor funding—is currently under review and may never recur. If DOE does again fund consumer-oriented intervention in the pending home heating oil proceedings, or in any other proceedings, or proposes a rule to authorize such funding routinely, there will be ample opportunity for the appellants to renew their complaint. Finally, even though the prior, now-completed conduct of DOE may have some continuing effect, the harm appellants fear—the imposition of price controls on home heating oil—is not now likely to occur.[4] In sum, the present controversy had become so attenuated and remote as to warrant dismissal of this action pursuant to the court's discretionary authority to grant or withhold injunctive and declaratory relief.

Therefore, on the authority of *W.T. Grant* and *Mechling Barge*, and without reaching the question of whether the case has become so moot that dismissal is constitutionally required, the judgment of the district court is

*Affirmed.*

---

**4.** Appellants do not claim that they have suffered harm merely from the payment of funds to EPTF. Indeed, their standing to make that claim is questionable. *See Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).