**COMMUNITY FOR CREATIVE NON-VIOLENCE, et al., Appellants,**

v.

**Judge John R. HESS, et al.**

**No. 83–1978.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 27, 1984.

Decided Oct. 9, 1984.

Mark A. Venuti, Washington, D.C., with whom Arthur B. Spitzer, Washington, D.C., was on the brief, for appellants.

Lutz Alexander Prager, Asst. Corp. Counsel, Washington, D.C., with whom John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before ROBINSON, Chief Judge, WALD, Circuit Judge, and PALMIERI *, Senior District Judge.

Opinion for the Court filed by Chief Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

Appellants instituted this litigation to vindicate their position that a practice pursued by certain judges of the Superior Court of the District of Columbia violated the Free Exercise Clause of the First Amendment. Appellants sought a judgment declaring that the practice was unlawful, and an injunction against conduct conforming to it.[1] The District Court dismissed their suit on the ground that the case had become moot.[2] Our review of the record leads us to conclude that, whether or not the controversy between appellants and the judges had so abated as to require dismissal, it has become so attenuated as to call for an exercise of discretionary judicial authority to forego a decision on appellant's constitutional claim.

## I

The individual appellants subscribe to religious tenets forbidding them to exhibit

---

* Of the United States District Court for the Southern District of New York, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

1. Appellants later dropped their demand for an injunction, and thereafter have confined their effort to declaratory relief.

2. *Community for Creative Non-Violence v. Hess,* Civ. No. 81–2644 (D.D.C. July 22, 1983) (order and memorandum), Record on Appeal (R.) 34.

respect for any worldly entity.[3] They thus assert that they are precluded from rising when a judge enters or exits the courtroom.[4] These appellants also are members of the Community for Creative Non-Violence (CCNV), the activities of which require members to attend court frequently as parties or observers.[5] Members thus often find their religious beliefs in conflict with the ancient custom of standing when the courtroom session opens, recesses or adjourns.

In the recent past, CCNV members have encountered this difficulty in the Superior Court of the District of Columbia. One judge of that court jailed a member who refused to take part in the rising ceremony; two other judges threatened non-rising members with arrest and incarceration; another judge had a non-rising member removed from the courtroom; and still another directed non-rising members to remain outside the courtroom until court convened.[6] These practices, it is contended, transgress the Free Exercise Clause.[7]

It is clear enough, however, that none of the involved judges was then aware that

the religious scruples of those so treated were at odds with rising.[8] After a remand of this case on an earlier appeal,[9] the judges through affidavits [10] and a status report,[11] informed the District Court that they would not have acted as they did had they known the reason for the refusals to rise.[12] The judges suggested, as a means of avoiding future confrontations, that CCNV members attending court and claiming a First Amendment right to remain seated during the rising ritual notify the judges to that effect through court personnel prior to opening of the session.[13] Though expressly reserving the right to confirm an attendee's sincerity, the judges indicated that once they are satisfied that non-rising is religiously motivated, they will accommodate the attendee's beliefs, presumably by allowing him to remain seated throughout opening and closing ceremonies.[14] On the strength of this assurance, the District Court dismissed the action as one no longer presenting a live controversy.[15]

## II

■■■ Article III of the Constitution limits federal-court jurisdiction to litigation

3. Brief for Appellants at 3.

4. Brief for Appellants at 3.

5. CCNV members engage in acts of civil disobedience "in order to call attention to the plight of the poor," and thus frequently appear in court as defendants. Brief for Appellants at 5. In addition, members often attend court, as third-party custodians or otherwise, "to give support and guidance to those in need." Complaint ¶ 7, *Community for Creative Non-Violence v. Hess*, Civ. No. 81–2644 (D.D.C.) (filed Nov. 2, 1981), R. 1.

6. *Community for Creative Non-Violence v. Hess*, Civ. No. 81–2644 (D.D.C. July 22, 1983) (memorandum) at 2–3, R. 34.

7. Brief for Appellants at 3.

8. *Community for Creative Non-Violence v. Hess*, supra note 6, at 3–5, R. 34.

9. The District Court initially dismissed appellants' action in reliance upon *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We reversed and remanded on the ground that the facts of the case did not summon an applica-

tion of *Younger*. *Kaplan v. Hess*, 224 U.S.App. D.C. 281, 694 F.2d 847 (1982). We directed the District Court to consider, among other factors, "whether appellants continue to face a genuine threat of prosecution or sanction," and noted that a case or controversy might no longer exist if the judges had changed their practices. *Id.*, at 285, 694 F.2d at 851.

10. See Motion of Defendants to Dismiss Second Amended Complaint, *Community for Creative Non-Violence v. Hess*, Civ. No. 81–2644 (D.D.C.) (filed Apr. 19, 1983), Exhibits 1–7, R. 23 [hereinafter cited as Motion to Dismiss].

11. Status Report, *Community for Creative Non-Violence v. Hess*, Civ. No. 81–2644 (D.D.C.) (filed June 15, 1983), R. 31 [hereinafter cited as Status Report].

12. *Id.* at 4.

13. *Id.*

14. *Id.* at 4–5.

15. *Community for Creative Non-Violence v. Hess*, supra note 6, at 7, R. 34.

presenting an actual case or controversy.[16] Federal courts are without power to resolve disagreements, whatever their nature, that fail to meet this jurisdictional prerequisite.[17] The case-or-controversy requirement ensures that the courts will undertake resolution only of issues that are concrete and sharply focused,[18] and bars the courts from addressing disputes that are imagined rather than real.[19]

■ Recognizing the salutary purposes of the restrictions thus placed on the federal judiciary, the courts have developed principles, which are closely related to the Article III mootness doctrine,[20] guiding their discretion to forego decision on the merits in some circumstances actually leaving them with power to act.[21] As we recently declared, a court may refuse to entertain a suit which, while "not actually moot, is so attenuated that considerations of prudence and comity ... counsel the court to stay its hand, and to withhold relief it has power to grant." [22]

This well-entrenched authority extends to situations in which the defendant, of his own volition, has ceased the offending behavior subsequent to filing of the action.[23] Unless there is " *'no* reasonable expectation' " that the defendant will repeat the wrong, the case is not moot within the meaning of Article III,[24] for "[t]he defendant is free to return to his old ways" [25] and there remains "a public interest in having the legality of the practices settled." [26] Yet, the wholesome considerations underlying the Article III case-or-controversy requirement [27] may counsel the court to refrain from adjudication in that instance as well.

■ In determining whether it should dismiss a case which is not technically moot, but in which the defendant voluntarily has discontinued the challenged activity, the court should consider whether there remains "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." [28] The court should take into

**16.** U.S. Const. art. III.

**17.** *E.g., City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675, 684 (1983); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–1953, 20 L.Ed.2d 947, 958–962 (1968).

**18.** *E.g., Flast v. Cohen, supra* note 17, 392 U.S. at 96–97, 88 S.Ct. at 1951, 20 L.Ed.2d at 960; *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962).

**19.** *E.g., Golden v. Zwickler,* 394 U.S. 103, 109–110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113, 118 (1969); *United Pub. Workers v. Mitchell,* 330 U.S. 75, 90, 67 S.Ct. 556, 564, 91 L.Ed. 754, 767 (1947); *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829 (1941).

**20.** See generally 13 C. Wright, A. Miller & E. Cooper, Federal Practice § 3533 at 266–269 (1975).

**21.** See *id.; Chamber of Commerce v. United States Dep't of Energy,* 200 U.S.App.D.C. 236, 238, 627 F.2d 289, 291 (1980). See also cases cited *infra* note 23.

**22.** *Chamber of Commerce v. United States Dep't of Energy, supra* note 21, 200 U.S.App.D.C. at 238, 627 F.2d at 291.

**23.** See, *e.g., DeFunis v. Odegaard,* 416 U.S. 312, 318, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164, 169–170 (1974); *A.L. Mechling Barge Lines v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 342, 7 L.Ed.2d 317, 322–323 (1961); *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953); *Chamber of Commerce v. United States Dep't of Energy, supra* note 21, 200 U.S.App.D.C. at 239, 627 F.2d at 292.

**24.** *United States v. W.T. Grant Co., supra* note 23, 345 U.S. at 633, 73 S.Ct. at 897, 97 L.Ed. at 1309, quoting *United States v. Aluminum Co. of Am.,* 148 F.2d 416, 448 (2d Cir.1945) (emphasis supplied). See also *County of Los Angeles v. Davis,* 440 U.S. 625, 631–633, 99 S.Ct. 1379, 1383–1384, 59 L.Ed.2d 642, 649–650 (1979).

**25.** *United States v. W.T. Grant Co., supra* note 23, 345 U.S. at 632, 73 S.Ct. at 897, 97 L.Ed. at 1309.

**26.** *Id.*

**27.** See 13 C. Wright, *supra* note 20, § 3533 at 266–269.

**28.** *United States v. W.T. Grant Co., supra* note 23, 345 U.S. at 633, 73 S.Ct. at 898, 97 L.Ed. at 1309.

account "the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations."[29] These factors, so vital in suits for injunction, are equally important in declaratory judgment actions,[30] as this one eventually became.[31] As the Supreme Court has said, "sound discretion withholds [a declaratory judgment] where it appears that a challenged 'continuing practice' is, at the moment adjudication is sought, undergoing significant modifications so that its ultimate form cannot be confidently predicted."[32] That is precisely the situation before us.

### III

■ While the Superior Court judges joined herein have not completely and absolutely discarded their former practices, and thus perhaps have not actually mooted this case,[33] they clearly have modified their behavior significantly since suit was brought.[34] And appellants' counsel, at oral argument, informed us that appellants have no religious, and hence, no constitutional, objection to providing advance no-

tice of their intended presence in the judges' courtrooms.[35] We therefore think the likelihood of recurrent confrontations between appellants and the judges is much too small to warrant decision of the issue tendered on this appeal.

However the treatment accorded CCNV members in the past might fare constitutionally,[36] the judges have volunteered to reconcile their needs for respect and order in the courtroom with members' religious dictates.[37] For the moment at least, any estimate of the fact or nature of future difficulty would be hazardous. That, combined with members' willingness to make known their expected court attendances, leads us to exercise our discretion to stop short of resolution of the pre-existing constitutional dispute.

In this conclusion, we are strongly supported by our fairly recent disposition in *Chamber of Commerce v. United States Department of Energy.*[38] That case involved an attack on a departmental decision to provide funds to enable a consumer-oriented organization to intervene in a regula-

**29.** *Id.*

**30.** *A.L. Mechling Barge Lines v. United States, supra* note 23, 368 U.S. at 331, 82 S.Ct. at 342, 7 L.Ed.2d at 322–323; *Chamber of Commerce v. United States Dep't of Energy, supra* note 21, 200 U.S.App.D.C. at 239, 627 F.2d at 292. See Second Amended Complaint ¶ 2, *Community for Creative Non-Violence v. Hess,* Civ. No. 81–2644 (D.D.C.) (filed Feb. 28, 1983), R. 17.

**31.** See note 1 *supra.*

**32.** *A.L. Mechling Barge Lines v. United States, supra* note 23, 368 U.S. at 331, 82 S.Ct. at 342, 7 L.Ed.2d at 322–323. See also *Chamber of Commerce v. United States Dep't of Energy, supra* note 21, 200 U.S.App.D.C. at 239, 627 F.2d at 292.

**33.** See notes 24–26 *supra* and accompanying text.

**34.** One of the judges informed the District Court that CCNV members need not give him notice of intended appearances in his courtroom, Status Report, *supra* note 11, at 4, R. 31, but stated that, to minimize any influence of their conduct on non-members, they should sit in the back row. *Id.* The judge also stated, however, that he does "not make it a practice to look and see

if there are people seated when [he] enter[s] the courtroom," and that he does "not anticipate any problems in this regard because [he has] never had any in the past." Motion to Dismiss, *supra* note 10, Exhibit 3 at 2, R. 23. In these circumstances, any aftermath of the judge's suggestion on back-row seating of non-risers is incapable of present definition. See text *supra* at note 16.

**35.** Appellants foresee a practical problem, however. We are told that frequently CCNV members are called upon to attend court on short notice, arrive just before court convenes, and thus, that it may sometimes be difficult for them to make their impending presence known, particularly if court personnel are inaccessible or unhelpful. We do not perceive this to be a problem insoluble by cooperation between appellants and the judges.

**36.** See text *supra* at note 6. We intimate no view as to whether the judges' actions would withstand scrutiny under the Free Exercise Clause.

**37.** See text *supra* at notes 9–14.

**38.** *Supra* note 21.

**702**

tory proceeding before the Department.[39] During the pendency of the suit, the organization's participation in the proceeding came to an end and all monies requested by it were paid. Subsequently, Congress, in certain of its appropriations, imposed a moratorium on further intervenor-funding, and the Department stayed further intervenor-funding pending congressional approval.[40] In these circumstances, the District Court dismissed the case as moot.[41] On appeal, we noted that the activity precipitating the suit had ended and that departmental intervenor-funding might never recur but, nonetheless, we did not reach the question whether the case was moot in the constitutional sense.[42] Rather, we were guided by Supreme Court decisions [43] to the conclusion that the events that had transpired after institution of the suit had caused it to "become so attenuated and remote as to warrant dismissal ... pursuant to the court's discretionary authority to grant or withhold declaratory relief." [44] Similarly, we find the controversy tendered here so "attenuated" and "remote" as to call for an exercise of our discretion in the same direction.[45]

We do, however, end our discussion with a caveat. In declining to reach the merits of the challenge in *Chamber of Commerce,* we observed that "[i]f [the Department] does again fund consumer-oriented intervention in the pending home heating oil proceedings, or in any other proceedings, or proposes a rule to authorize such funding routinely, there will be ample opportunity for the appellants to renew their complaint." [46] Likewise, if in the future appel-

lants can point to some concrete instance of a clash between courtroom traditions and their beliefs, they will be at liberty to again question the rising ceremony as an impingement on their First Amendment right to freely exercise their religion.[47]

The judgment appealed from is

*Affirmed.*

**39.** 200 U.S.App.D.C. at 237, 627 F.2d at 290.

**40.** *Id.* at 237–238, 627 F.2d at 290–291.

**41.** *Id.* at 237, 627 F.2d at 290.

**42.** *Id.* at 239, 627 F.2d at 292.

**43.** See notes 24–32 *supra* and accompanying text.

**44.** *Chamber of Commerce v. United States Dep't of Energy, supra* note 21, 200 U.S.App.D.C. at 239, 627 F.2d at 292.

**45.** Here, as in *Chamber of Commerce v. United States Dep't of Energy, supra* note 21, the Dis-

trict Court dismissed the case on the ground that events subsequent to our remand had mooted the suit. *Community for Creative Non-Violence v. Hess, supra* note 6, at 7, R. 34.

**46.** *Chamber of Commerce v. United States Dep't of Energy, supra* note 21, 200 U.S.App.D.C. at 239, 627 F.2d at 292.

**47.** In so reminding, we intimate nothing as to the likelihood of success. See *Kaplan v. Hess, supra* note 9, 224 U.S.App.D.C. at 283, 694 F.2d at 849.