**REEVE ALEUTIAN AIRWAYS, INC., Appellant,**

v.

**UNITED STATES of America, et al.**

No. 88-5411.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1989.

Decided Nov. 21, 1989.

Bert W. Rein, with whom Philip J. Davis and Edwin O. Bailey, Washington, D.C., were on the brief, for appellant.

R. Craig Lawrence, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John D. Bates, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellees. Richard N. Reback, Asst. U.S. Atty., also entered an appearance for appellees.

Before WALD, Chief Judge; BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This is an appeal from an order of the United States District Court for the District of Columbia. The District Court granted summary judgment in favor of the Department of Defense ("DOD") and its Commercial Airlift Review Board ("CARB") and denied the summary judgment motion of Reeve Aleutian Airways, Inc. ("Reeve"). Reeve had requested the District Court to set aside an order of CARB prohibiting Reeve's participation in DOD's airlift transportation program and to enjoin CARB's application of the DOD regulations pursuant to which CARB had suspended Reeve. Because of CARB's failure to state with any specificity the grounds for Reeve's suspension, we vacate the District Court's order and instruct the District Court to remand the matter to CARB.

## I. BACKGROUND

### A. *Statutory and Factual Background*

Reeve provides scheduled passenger and cargo service along the Aleutian Islands chain in Alaska. Since 1972, Reeve has participated in DOD's military airlift transportation program and has flown DOD military and civilian personnel on its regularly scheduled flights. Reeve's participation in the program is pursuant to contract with DOD.

After the 1985 commercial air disaster in Gander, Newfoundland in which almost 250 servicemen were killed, Congress directed the Secretary of Defense to establish a Commercial Airlift Review Board with responsibility regarding the suspension and reinstatement of air carriers operating under DOD contracts. 10 U.S.C. § 2640(c)–(d). Department of Defense regulations empower CARB to suspend air carriers upon the occurrence of a serious or fatal accident; a violation of FAA rules,

regulations, orders or standards; deficiencies in aircraft maintenance; deficient compliance with "generally accepted standards of airmanship, training, and maintenance practices and procedures"; or "[a]ny other condition which affects the safe operation of [a] carrier's flights...." 32 C.F.R. § 861.4 (1988). CARB's regulations provide for a two-step procedure consisting of "temporary nonuse" and "suspension." Temporary nonuse immediately excludes a carrier from any participation in the DOD airlift transportation program; no prior notice is required, and temporary nonuse status ends automatically if suspension proceedings are not commenced within 30 days. *Id.* § 861.6(a). If CARB determines that suspension proceedings are in order, it must notify the carrier that such proceedings are under consideration and must state the basis for them. *Id.* § 861.6(b)(2).

The regulations provide further that the presiding CARB member is to establish such hearing procedures "as may be appropriate which shall be as informal as practicable consistent with administrative due process." *Id.* Carriers may appear in person and offer written or oral evidence (or both). The Board may consider, among other things, evidence of "[c]orrective actions that may have been taken by the carrier to ... [c]orrect the specific deficiencies that have led the Board to consider suspension, and ... [p]reclude recurring similar deficiencies," and "[s]uch other matters as the Board deems relevant." *Id.* § 861.6(b)(3)(ii)–(iv). The carrier has the burden of proof by clear and convincing evidence. *Id.* § 861.6(b)(4). CARB is not required to put on evidence at the hearing or to offer witnesses. If a carrier fails to meet its burden, it is excluded from the DOD airlift transportation program for a CARB-fixed period of time or until the carrier establishes that remedial measures have been taken. *Id.* § 861.6(c).

In an initially unrelated development, the Federal Aviation Administration ("FAA") conducted a National Aviation Safety Inspection Program ("NASIP") review of Reeve in September and October of 1987. DOD played no role in this review. The

NASIP review raised 384 items that Reeve characterizes as "opened for discussion," Appellant's Brief at 6, and that DOD characterizes as "deficiencies in Reeve's operations," Appellees' Brief at 4. Both parties agree that 28 of the items raised potential enforcement issues. Five items required FAA action, but the FAA did not suspend Reeve.

In October of 1987, CARB received from the FAA a copy of the NASIP report. By letter dated 27 November 1987, CARB placed Reeve in immediate temporary non-use status and informed Reeve that suspension action was being considered. As the basis for its actions, CARB cited the "information provided in the FAA National Aviation Safety Inspection report" which "indicate[d] deficiencies that raise serious doubts about the training and company procedures of both the operations and maintenance departments plus the airworthiness of your company's aircraft." Joint Appendix ("J.A.") at 45–46. Reeve submitted approximately 200 pages of documents to CARB concerning the NASIP report. Prior to the suspension meeting or hearing, CARB did not provide further information; Reeve did not object to the procedures, however, nor did it claim a lack of understanding of the nature of the questions raised or charges brought by CARB.

On 14 December 1987, CARB held a meeting or hearing attended by the president of Reeve and some two dozen CARB officials. Reeve protests that "CARB gave no specification of its concerns or any allegations against Reeve, made no presentation of CARB or FAA evidence or testimony against Reeve and did not give Reeve the opportunity to confront any of the FAA NASIP team or the CARB staff that analyzed the report." Appellant's Brief at 12. Reeve also claims that it was not told that the CARB staff had prepared a report reviewing potential safety implications of the NASIP report, and that CARB offered no contradictory evidence, produced no witnesses or documents, made no transcript, and made no effort to inspect Reeve's facilities, aircraft or personnel. CARB points out that Reeve did not object to the hearing, requested no witnesses or documents, and did not claim that it was unaware of the issues upon which the proceeding was based. However, the record does reflect that at the hearing Richard Reeve requested that he be advised of "any specific NASIP items about which [CARB] were sufficiently concerned to hold [Reeve] out of service." Affidavit of Richard Reeve, J.A. at 41.

On 29 December 1987, CARB suspended Reeve indefinitely from participating in the DOD program. J.A. at 47. As a basis for suspension, the letter stated without elaboration that Reeve "still fails to comply with the applicable [FAA] regulations, rules, and standards." *Id.* The decision prevented DOD personnel from traveling on Reeve in their official capacity. The suspension had no official effect on private travelers or non-military federal personnel, although Reeve claims that it suffered substantial economic loss both because of the loss of military traffic and because of the unfavorable publicity surrounding the decision.

Reeve appealed on 5 February 1988, raising issues of CARB's authority and of due process. In a letter dated 22 February 1988, DOD denied the appeal. Pursuant to Reeve's request for reinstatement, a DOD inspection team examined Reeve's facilities and operations on 28 March 1988. Within two weeks of the inspection, Reeve was reinstated as a DOD carrier. Reeve filed suit for review in the District Court on 1 April 1988.

### B. *District Court Opinion*

In an unreported Memorandum Opinion dated 30 September 1988, the District Court denied Reeve's motion for summary judgment and granted DOD's cross-motion. The District Court found that CARB had jurisdiction over Reeve; Reeve does not appeal this finding. The District Court also found that Reeve was not entitled to application of the due process standards that apply to government contractors' debarment proceedings because Reeve's suspension was not a debarment. Relying on *Arrow Air, Inc. v. United States,* 649 F.Supp. 993 (D.D.C.1986), for the proposition that a debarment action—which re-

quires prior notice and a hearing—must be based on charges of fraud, dishonesty, or lack of integrity, the District Court found that the "charges against [Reeve] did not fall into this category," *Reeve Aleutian Airways, Inc. v. United States,* No. 88–0897, slip op. at 7, 1988WL104936 (D.D.C. Sept. 30, 1987), and that therefore "these [DOD] procedures met, and possibly exceeded what was due to plaintiff." *Id.* The District Court therefore granted DOD's summary judgment motion.

## II. ANALYSIS

### A. *Mootness*

Although it did not so argue before the District Court, DOD now asserts that Reeve's claim is moot because the carrier has been reinstated and does not face suspension in the immediate future; therefore, this Court's opinion would be merely advisory. To establish a live controversy, DOD claims, "Reeve must show that it has sustained or is immediately threatened with sustaining some specific, direct injury as a result of the official conduct it challenges...." Appellees' Brief at 11 (citing *Golden v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969), and *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Past exposure to illegal conduct fails to establish a present controversy meriting injunctive relief without a showing of present adverse effect. *Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665; *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

DOD relies primarily upon *Lyons* and *Golden.* In *Lyons,* one Lyons requested injunctive relief against the City of Los Angeles, whose police officers often used "chokeholds" as a means of subduing suspects even when the officers were in no danger of death or imminent physical injury. The Court held that the fact that Lyons may have been illegally stopped and choked by the police, although a ground for a damages claim, did not establish a real, immediate threat that he would again be stopped and illegally choked; it is entirely speculative to assert that "in every ...

encounter between the police and a citizen, the police will act unconstitutionally ... [or that] Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold...." *Lyons,* 461 U.S. at 108, 103 S.Ct. at 1668.

In *Golden,* one Zwickler requested a declaratory judgment that a New York statute prohibiting distribution of anonymous handbills in connection with congressional elections was unconstitutional. Because the congressman who was the target of Zwickler's handbills had been elected to the Supreme Court of New York for a 14–year term and would not be a candidate in the election in connection with which Zwickler had planned to distribute literature, the Court found that the assertion that another occasion might arise where he would be prosecuted for distributing the handbills was entirely conjectural. The Court therefore ordered the complaint dismissed.

DOD argues that Reeve occupies a position analogous to that of Messrs. Lyons and Zwickler and that Reeve has not claimed that its current operations continue to display the deficiencies set out in the NASIP report. Finally, DOD argues that Reeve's claim, even if justiciable, has become so remote and attenuated that the Court should stay its hand, as indicated by this Court's decisions in *CCNV v. Hess,* 745 F.2d 697 (D.C.Cir.1984), and *Chamber of Commerce v. Department of Energy,* 627 F.2d 289 (D.C.Cir.1980).

We reject DOD's argument. As Reeve aptly responds, "[i]f reinstatement could moot a challenge to the CARB's procedures in suspending a carrier, then DOD could forever avoid judicial review of its actions by promptly reinstating any aggrieved carrier which filed a lawsuit and any carrier wishing judicial review of a suspension would be compelled to forego any attempt at reinstatement." Appellant's Reply Brief at 4. Under the applicable two-prong test set out in *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979), a dispute is not moot unless (1) there is no reasonable expectation that the alleged vio-

lation will recur and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Accord United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953). The burden lies with the moving party, and it is a heavy one. *See Davis*, 440 U.S. at 631, 99 S.Ct. at 1383; *Doe v. Harris*, 696 F.2d 109, 112 (D.C.Cir.1982).

■ CARB's regulations allow it to take action against a carrier at any time based on any concern allegedly related to safety. The agency's claim to such wide-ranging, summary authority heightens a reasonable expectation of a repeat violation, especially in light of the fact that full compliance with the relevant published standards does not preclude CARB from taking action and especially where the number of carriers subject to CARB's jurisdiction is relatively small. Two recent cases of this Circuit, *Delta Air Lines, Inc. v. Civil Aeronautics Bd.*, 674 F.2d 1 (D.C.Cir.1982), and *British Caledonian Airways Ltd. v. Bond*, 665 F.2d 1153 (D.C.Cir.1981), rejected the government's mootness claims and found live controversies after the termination of Civil Aeronautics Board and Federal Aviation Administration orders, respectively. The possibility of a recurring violation against Reeve equals or exceeds the possibility of recurrence in those cases, and they are controlling.

The mootness cases relied upon by DOD are distinguishable because they all present situations in which the plaintiffs were unable to establish even the existence of a clear or final policy to be challenged; the likelihood of their injuries recurring was therefore considerably diminished. In this case there is a clear policy, DOD has defended it, and a federal court has approved it. Indeed, DOD's very defense of CARB's regulations makes it more likely that Reeve will be subject to the procedures. *See W.T. Grant Co.*, 345 U.S. at 632, 73 S.Ct. at 897; *Doe*, 696 F.2d at 113; *In re Center for Auto Safety*, 793 F.2d 1346, 1351–53 (D.C.Cir.1986); *Delta Air Lines*, 674 F.2d at 4 (CAB exercised challenged authority three times since the stat-

ute's enactment); *British Caledonian*, 665 F.2d at 1158 (assertion of legal authority by FAA Administrator leads to reasonable conclusion that carrier will be subject to same authority in the future). Reeve also raises the not insignificant point that a decision invalidating the CARB procedures may provide the basis for a subsequent action for money damages in the United States Court of Claims. *Doe*, 696 F.2d at 113–14; *British Caledonian*, 665 F.2d at 1158 n. 2.

The fact that the second prong of the *Davis* test—whether the effects of CARB's action have been completely and irrevocably eradicated—has not been met also leads us to the conclusion that Reeve's claim is not moot. Reeve has demonstrated the negative effects of the suspension on its public and civilian traffic, and it claims that it is still "under a cloud of suspicion for its suspension, evidenced by the significant and continuing drops in traffic after the CARB decision." Appellant's Reply Brief at 10.

DOD argues that this Court has recognized that cases may arise upon occasion in which we have the power to resolve questions or issue injunctions, yet we decline to do so because the matter has become too "attenuated." DOD relies upon *CCNV v. Hess*, 745 F.2d 697 (D.C.Cir.1984), and *Chamber of Commerce v. Department of Energy*, 627 F.2d 289 (D.C.Cir.1980).

We do not find DOD's "attenuation" argument persuasive. *Hess* considered the failure of certain individuals to rise upon the judges' entry into and exit from the courtrooms of the Superior Court of the District of Columbia. The individuals sought declaratory and injunctive relief on the ground that the requirement that they rise violated their rights under the Free Exercise Clause. Once the judges in question learned that the individuals were refusing to stand out of religious scruple, however, the judges agreed to alter usual courtroom procedure and attempt to accommodate the religious beliefs. This Court held that in such a situation, " 'where it appears that a challenged "continuing practice" is, at the moment adjudication is

sought, undergoing significant modifications so that its ultimate form cannot be confidently predicted,'" it was an exercise of sound discretion to withhold a declaratory judgment. *Hess,* 745 F.2d at 701 (quoting *A.L. Mechling Barge Lines v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 342, 7 L.Ed.2d 317 (1961)).

In *Chamber of Commerce,* we considered an attack on a decision of the Department of Energy to fund consumer-interest organizations so as to enable them to intervene in regulatory proceedings. While the action was pending, the involvement of the organization at issue came to an end and it received the payments it requested. Congress then halted such funding of intervenors, and the Department of Energy ceased its program pending congressional approval. We observed that "[t]he allegedly unlawful departmental practice ... is currently under review and may never recur. If DOE does again fund consumer-oriented intervention ... there will be ample opportunity for the appellants to renew their complaint." *Chamber of Commerce,* 627 F.2d at 292. Without reaching the question of mootness, we found that "the present controversy had become so attenuated and remote as to warrant dismissal...." *Id.*

Thus, in both of these cases the challenged practice had been withdrawn or was undergoing substantial revision, so that the reviewing court could not be certain of the regulation's ultimate form. We have no such difficulty here.

### B. *Adequacy of CARB's Findings*

■ Reeve argues that CARB's regulations are defective because they allow CARB to suspend a carrier without requiring that findings be made or published. We agree. CARB gave no reason why the presentation of the president of Reeve was unsatisfactory, nor did it explain why suspension was justified even though the FAA continued to allow Reeve to operate. CARB did not state what standards were violated, how the suspension determination was made, or what factors were relevant in that determination. The Lacey Affidavit, J.A. at 139, which detailed at least three standards that CARB may have used, is a prohibited post-hoc rationalization; the standards appear nowhere in the administrative record and do not represent an articulated basis for the agency's decision. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Insurance Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983); *Western Union Corp. v. FCC,* 856 F.2d 315, 318 (D.C.Cir.1988); *City of Brookings Mun. Tel. Co. v. FCC,* 822 F.2d 1153, 1165 (D.C.Cir.1987); *National Coalition Against the Misuse of Pesticides v. EPA,* 809 F.2d 875, 882–83 (D.C.Cir.1987). DOD's response with regard to the original decision is conclusory at best. DOD argues that the basis for its denial of Reeve's appeal was the continued existence of the problems indicated in the NASIP report; too many uncorrected problems remained. DOD points out that Reeve has never seriously questioned the violations noted in the report. DOD also claims that the comments of the DOD Air Carrier Service and Analysis Office, which were appended to the denial of the administrative appeal, provide some specific rationales for Reeve's suspension. Reeve replies that the comments attached to the denial of the appeal are post-hoc rationalizations that in any event are not authoritative statements that have decisional authority.

■ Reeve is surely correct when it argues that all items in the NASIP report are not of equal value or detriment. The report contained a wide array of FAA concerns—operational, clerical, and historical—none of which merited FAA action at the time of CARB's action, and CARB failed to identify which of the myriad details led it to its conclusion. CARB should have articulable, specific reasons for its suspension of Reeve, reasons that it can memorialize in a written finding. The letters from CARB to Reeve both after the original decision and on administrative appeal not only fail to be "tolerably terse"; they are so "intolerably mute" as to be inscrutable. *See Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir.), *cert. denied,* 403 U.S. 923, 91

S.Ct. 2233, 29 L.Ed.2d 701 (1971). Like the Lacey Affidavit, the staff commentary appended to the denial of the administrative appeal is a post-hoc rationalization that cannot suffice for articulable findings.

### C. *Due Process Claim*

The District Court found that Reeve was not entitled to application of the due process standards that apply to government contractors' debarment proceedings because Reeve's suspension was not a debarment. Because we conclude that CARB's findings are so scanty as to preclude judicial review, we decline to reach the constitutional questions of the quantum of process due Reeve and whether the notice and hearing provided by CARB meets the requisite standard. As we recently said, "[i]n reaching this conclusion, we are instructed by the oft-repeated adage that a 'most fundamental principle of constitutional adjudication is not to face constitutional questions but to avoid them, if at all possible.'" *City of El Paso v. S.E. Reynolds,* 887 F.2d 1103, 1106 (D.C.Cir.1989) (per curiam) (quoting *United States v. Lovett,* 328 U.S. 303, 320, 66 S.Ct. 1073, 1081, 90 L.Ed. 1252 (1946) (Frankfurter, J., concurring)).

### III. CONCLUSION

For the reasons set forth above, we vacate the order of the District Court and remand to that Court with instructions to remand the matter to CARB. On remand, CARB must identify the regulations or standards that Reeve violated and describe how they were violated, how CARB came to the determination to suspend Reeve, and what factors were relevant or important to that determination.