THE GRAY PANTHERS PROJECT
FUND, et al., Plaintiffs,

v.

Tommy G. THOMPSON, Secretary of
Health and Human Services,
Defendant.

No. CIV.A. 01–01374(HHK).

United States District Court,
District of Columbia.

Sept. 6, 2002.

Vicki Gottlich, Center for Medicare Advocacy, Washington, DC, for Plaintiff.

Scott Sutherland Harris, Peter David Blumberg, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiffs, four national organizations and individual Medicare beneficiaries, seek declaratory and injunctive relief to require the Secretary of the Department of Health and Human Services ("HHS") to comply with his statutory obligations under 42 U.S.C. § 1395w–24(a)(1) and 42 U.S.C. § 1395w–21(d).[1] These provisions set out a systematic scheme of activities for the Secretary to undertake "to broadly disseminate information to Medicare beneficiaries ... on coverage options" under the Medicare + Choice program. *See* 42 U.S.C. § 1395w–21(d)(1).

Before the court are plaintiffs' motion for summary judgment and defendant's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for a stay of proceedings. Upon consideration of the motions, the oppositions thereto,

and the record of this case, the court concludes that defendant's motion to dismiss or stay should be denied and plaintiffs' motion for summary judgment should be granted.

## I. BACKGROUND

### A. Legal Framework

This case centers around the Medicare + Choice program. The program, established by Congress in 1997, gives Medicare beneficiaries the option of selecting health coverage from a variety of private plans offered by participating Medicare + Choice Organizations ("MCOs"). In order to participate in this federal program, each participating MCO must furnish the Secretary of HHS with detailed and accurate information describing the coverage offered on an annual basis. 42 U.S.C. § 1395w–24(a)(2), (3), (4).

Once the information is in hand, the Secretary is required "to broadly disseminate" the information concerning the coverage options to eligible individuals. § 1395w–21(d)(1). This dissemination takes place "in order to promote an active, informed selection among such options," i.e., in order to allow eligible individuals to select the plan that best suits their needs. *Id.* Information is disseminated via a toll-free number and an Internet site. In addition, and importantly, the statute requires that the Secretary mail information comparing the various plans to every eligible individual. § 1395w–21(d)(2)(A).

### B. Factual Background

In 2001, the Secretary took two actions that resulted in the filing of this suit.

1. Section 1395w–24(a)(1) of Title 42 provided, during the relevant time period: "Not later than July 1 of each year, each Medicare + Choice organization shall submit to the Secretary, in a form and manner specified by the Secretary and for each Medicare + Choice plan for the service area (or segment of such an area if permitted under subsection (h)) in which it intends to be offered in the following year ...." Section 1395w–21(d)(2) provides that: "the Secretary shall mail to each Medicare + Choice eligible individual" information including a "list of plans and comparison of plan options."

First, the Secretary extended the deadline for MCOs to submit information to HHS regarding their coverage options. Second, he announced his intention to omit plan comparison data from his annual fall mailing to eligible individuals.

During the relevant time period, the statute clearly provided that MCOs were required to furnish information to the Secretary describing the coverage offered "[n]ot later than July 1 of each year." § 1395w–24(a)(1).[2] However, on May 25, 2001, the Secretary notified three industry associations that he had extended this deadline from July 1 to September 17.[3] He reaffirmed this position in three memoranda to all Medicare + Choice Organizations, dated May 31, 2001, June 7, 2001, and June 14, 2001.

The statute also provides that "the Secretary shall *mail* to each Medicare + Choice eligible individual residing in an area ... a list identifying Medicare + Choice plans that are (or will be) available to residents of the area." The statute further provides: "Such information shall be provided in a *comparative form*." § 1395w–21(d)(2)(ii) (emphasis added). Also in 2001, however, the Secretary announced his intention to omit plan comparison data from his annual fall mailing to eligible individuals. Instead, the Secretary encouraged beneficiaries to obtain plan information directly from the Department of Health and Human Services, via either a dedicated telephone service or the Internet. *See* Mem. in Supp. of Pls.' Mot. for a Prelim. Inj., Ex. B (Mem. from Gary A. Bailey, at 1).

On June 22, 2001, plaintiffs filed the instant action. Plaintiffs alleged that defendant's actions violate the Medicare statute, the Administrative Procedures Act, and the due process clause of the Fifth Amendment. Plaintiffs sought a permanent injunction, an order of mandamus, and a declaratory judgment.

On August 9, 2001, this court issued a preliminary injunction ordering the Secretary to comply with § 1395w–21(d). In compliance with the court's order, on October 17, 2001, the Secretary disseminated a supplemental mailing containing area-specific plan comparison information. Because the July deadline had passed, however, the Secretary did not comply with § 1395w–24(a)(1) during that year.

## II. ANALYSIS

### A. Mootness

■ Defendant argues that the court lacks jurisdiction over this controversy because the Secretary's October 17, 2001, mailing of comparative plan-specific information, in compliance with the court's preliminary injunction rendered this case moot.[4] This position cannot be sustained.

Defendant's actions fall within the "voluntary cessation" exception to the general

---

**2.** This statute has since been amended. The statute now provides that MCOs must provide this information to the Secretary "[n]ot later than the second Monday in September of 2002, 2003, and 2004 (or July 1 of each other year)." 2002 Amendments. Subsec. (a)(1). Pub.L. 107–188, § 532(b)(1).

**3.** Under the Secretary's rule, MCOs still had to submit some information by July 2, 2001, but these submissions were allowed to be in "brief, summary form" and they were not "binding" or "made public." *See* Mem. in Supp. of Pls.' Mot. for a Prelim. Inj., Ex. B (Mem. from Gary A. Bailey, at 1).

**4.** Although he does not do so here, defendant may argue that Congress' passage of Pub.L. 107–188, § 532(b)(1), which legislatively extends Medicare + Choice Organizations' filing deadline from July to September, moots the controversy. The court disagrees. The issue here is not merely whether information is to be submitted in July rather than September. The issue is whether the Department of Health and Human Services may disregard the clear mandate of Congress in its adminis-

rule regarding mootness.[5] Defendant's compliance with this court's preliminary injunction in 2001 and his plan, as provided to this court, to comply with such requirements in 2002, does not preclude this court from ruling that his 2001 actions violated the law. Furthermore, defendant's 2001 compliance with the preliminary injunction and his stated intention to voluntarily comply with the relevant statutory requirements in 2002 does not prevent this court from declaring that the defendant may not evade the requirements of 42 U.S.C. § 1395w–21(d) and § 1395w–21(a)(1) in the future.

■ It is well settled that voluntary cessation of illegal conduct does not, by itself, make an issue moot. *See Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville,* 508 U.S. 656, 662, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982); *United States v. W.T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). If the law

were otherwise, "the courts would be compelled to leave the defendant free to return to his old ways" *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citations and internal quotations omitted). It is further settled that a dispute is not moot unless there is "no reasonable expectation that the alleged violation will recur." *Reeve Aleutian Airways Inc., v. United States,* 889 F.2d 1139, 1142–43 (D.C.Cir.1989) (citing *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979));[6] *see Friends of the Earth, Inc.,* 528 U.S. at 190, 120 S.Ct. 693. Finally, the law is clear that the moving party bears the "heavy" burden of showing that the violation will not reoccur, i.e., that he will abide by the relevant statutory provisions in future years. *See Friends of the Earth,* 528 U.S. at 189, 120 S.Ct. 693; *Reeve Aleutian Airways* 889 F.2d at 1143 ("The burden lies with the moving party, and it is a heavy one."); *Doe v. Harris,* 696 F.2d 109, 111 (D.C.Cir.1982).

The Secretary has not met his burden. Despite numerous opportunities to per-

---

tration of the Medicare+Choice Program. With this more lenient deadline, the Secretary may be more likely to comply with the § 1395w–24(a)(1) because he may find compliance less burdensome. However, because the Secretary has not made it "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," even in light of the more lenient deadline, this court retains jurisdiction. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (providing the relevant standard). Moreover, even were the court to find that the controversy is moot in regard to § 1395w–24(a)(1), § 1395w–21(d) has not been amended and is still in force.

5. It is clear that defendant would not have complied with 42 U.S.C. § 1395w–21(a)(1) and 42 U.S.C. § 1395w–21(d), had the court not ordered him to do so. Thus, one may argue that defendant's actions were not "vol-

untary" in the common sense of the word. Nevertheless, the defendant's actions fall within traditional "voluntary cessation" doctrine. *See, e.g., Milwaukee Police Ass'n v. Jones,* 192 F.3d 742, 747 (7th Cir.1999) (applying the voluntary cessation doctrine to defendant's compliance a court-ordered temporary restraining order); *Rosaly v. Ignacio,* 593 F.2d 145, 147 n. 3 (1st Cir.1979) (holding that the defendant's compliance with the district court's order "in no way ... mooted" the controversy).

6. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979), provides, as a second prong of the mootness inquiry, that an issue is not moot unless "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Because defendant has failed to satisfy even the first prong of the *Davis* test, the court will not analyze whether the second prong is satisfied.

suade the court that, going forward, he will comply with the letter and spirit of the relevant statutory provisions, he has failed to do so.

In his defense, the Secretary argued, in regard to 42 U.S.C. § 1395w–21(d), that "it was not possible ... to comply with the letter of the statute by mailing complete information to all beneficiaries." Opp'n to Pls.' Mot. for a Prelim. Inj. Decl., of Michael R. McMullan ¶ 15 ("McMullan Decl."). The Secretary advanced this argument even though he apparently recognized that the comparative format was legislatively mandated *and* "necessary for a beneficiary who wishes to make a meaningful comparison of Medicare + Choice plan options." *Id.* at ¶ 15. Given that the Secretary's violation of the statute was no mere oversight, and that recent changes to the Medicare + Choice program likely make compiling and disseminating relevant information by the statutory deadline more, not less, challenging,[7] the court fears that, without its intervention, the Secretary will again violate the statute. *Cf. Fraternal Order of Police v. Rubin,* 134 F.Supp.2d 39, 43 (D.D.C.2001) (finding the controversy moot, in part, because the plaintiffs were challenging an isolated action, not a concerted policy).

■ Furthermore, the court is troubled by the Secretary's failure to confess error regarding his past conduct. Instead, the Secretary has repeatedly asserted that his actions were reasonable, in light of relevant constraints. *See, e.g.,* Def's. Mot. in Opp'n. to Pls.' Mot. for Summ. J. at 4 ("the Secretary determined that the only reasonable approach would be not to include generic plan information ... in the Medicare & You Handbook"); *id.* at 22 ("HHS has properly and intelligently balanced the often conflicting statutory goals and practical considerations presented to it"). Given this position, the court cannot be convinced that the violations will not reoccur, absent the court's involvement. *See In re Center for Auto Safety,* 793 F.2d 1346, 1353 (D.C.Cir.1986) (citations and quotations omitted) (finding that the National Highway Safety Administration's position that its conduct, while out of compliance with the relevant statute, was nonetheless reasonable "heightens the probability that the agency will once again fail to meet statutory deadlines in the future" and thus creates "some cognizable danger of recurrent violation"); *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742, 747 (7th Cir.1999) (finding that the defendant's compliance with a temporary restraining order did not render a case moot, especially because the defendant never actually conceded that his action had been unconstitutional).[8]

7. Compliance with § 1395w–21(d) might prove to be more difficult now than ever before because, while MCOs now have until September to submit the details of their plans to the Secretary, the Secretary must still mail a comparison of plan options by the "coordinated election period." § 1395w–21(d). The deadline for these mailings was relaxed somewhat by Pub.L. 107–188, § 532(c)(1)(A), which amended 42 U.S.C. § 1395(e)(3)(B) and effectively adjusted the Secretary's deadline from October 15th to mid-December for the years 2003, 2004, and 2005. However, while the new statutory scheme gives MCOs an additional three and a half months to submit filings to the Secretary, the new scheme gives the Secretary only an additional two months to compile and mail comparative data to Medicare beneficiaries. The upshot is that the Secretary now has even less time to accomplish this difficult task. Given that the "statute's requirement to provide [ ] plan comparison information by mail imposed an impossible burden to meet both in terms of cost and practicability," in 2001 (McMullan Decl. at ¶ 23), the court remains unconvinced that the Secretary stands ready to comply with § 1395w–21(d), especially given this new constraint.

8. The Secretary further argues that the case is not ripe for review. The Secretary argues that, because the court cannot know the " 'actual contours' of the agency's plan" for future

On the whole, defendant has simply failed to provide the court with adequate assurances that he intends to comply with the applicable provisions in the long run. *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 874 (5th Cir.2000) (rejecting appellees' claim that the case was moot, in part, because appellees had failed to make adequate assurances that they were dedicated to statutory compliance). Defendant has not met his weighty burden of showing that the unlawful conduct will not recur. This controversy is therefore justiciable.

**B.  Summary Judgment**

■ For the reasons stated above, the court has jurisdiction over this controversy. Thus, we may proceed to the plaintiff's motion for summary judgment. Under the Federal Rules of Civil Procedure, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). *See Flemmings v. Howard Univ.*, 198 F.3d 857, 860 (D.C.Cir.1999). Federal Rule 56 requires the party opposing the summary judgment motion file affidavits or other evidence setting forth specific facts showing that there is a genuine issue for trial. F.R. Civ. P. 56(e).

In the instant case, the facts cited above are dispositive, and they are not in dispute. Therefore, summary judgment is appropriate.

**III.  CONCLUSION**

"[T]here exists no general administrative power to create exemptions to statutory requirements based upon the agency's perceptions of costs and benefits." *Alabama Power Co. v. Costle*, 636 F.2d 323, 357 (D.C.Cir.1979). Agencies may not choose to follow some laws while ignoring others, and an agency "may not substitute its own policy for that of the legislature." *Louisiana Fed. Land Bank Ass'n, FCLA v. Farm Credit Administration*, 180 F.Supp.2d 47, 57 (D.D.C.2001). Put simply, agencies, like the rest of us, must obey the law—even if compliance is cumbersome, burdensome, or costly.

Here, the Secretary chose not to obey Congress' unambiguous dictate. His actions, therefore, constitute a violation of rights secured by 42 U.S.C. § 1395w–24(d), § 1395w–21(a) and 5 U.S.C. §§ 701–706.[9] Furthermore, the Secretary has failed to sufficiently demonstrate that, in the future, he will not unilaterally refuse to comply with the relevant statutory requirements governing the Medicare + Choice program. Consequently, the Secretary's motion to dismiss, or, in the alternative to stay this action, is denied

---

years, any harm would be unduly speculative and any relief premature. *See* Def.'s Mem. in Supp. of Mot. to Dismiss, at 10. In making this argument alongside his argument concerning mootness, defendant is trying to have it both ways. He is arguing that it is both too late and too early for the court to rule. He is stating, essentially, that the harm done in 2001 is over, and so the court may not act, and the harm done (if any) in 2002 has not yet occurred, so the court may not act. The court refuses to tie its hands in such a manner. In this case, the issue is fit for review, and the Secretary's behavior has caused

plaintiffs cognizable injury. *See* App. of Decls. in Supp. of Pls.' Mot. for Prelim. Inj. Thus, the controversy is ripe. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**9.** Because this court finds that the Secretary violated 5 U.S.C. §§ 701–706, we do reach the question of whether the Secretary also violated the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553 or the due process clause of the Fifth Amendment.

and plaintiffs' motion for summary judgment is granted.

An appropriate order accompanies this memorandum.

## JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 5th day of September 2002 hereby

**ORDERED and ADJUDGED** that judgment is entered in favor of plaintiffs; and it is further

**ORDERED** that defendant, his successors in office, his agents, employees, and all persons acting in concert with him, are enjoined from declining to comply with the requirements of 42 U.S.C. § 1395w–21(d) and 24(a), as amended, and must obey the statute as written.

