**PROFESSIONAL REACTOR OPERATOR SOCIETY, et al., Petitioners,**

v.

**The UNITED STATES NUCLEAR REGU-LATORY COMMISSION and the United States of America, Respondents.**

No. 90–1120.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 4, 1991.
Decided July 23, 1991.

Deborah B. Charnoff, Washington, D.C., for petitioners.

Carolyn F. Evans, Attorney, Nuclear Regulatory Com'n, with whom William C. Parler, General Counsel, John F. Cordes, Jr., Sol. and E. Leo Slaggie, Sp. Counsel, Nuclear Regulatory Com'n, Richard B. Stewart, Asst. Atty. Gen., Evelyn S. Ying and Martin W. Matzen, Attorneys, Dept. of Justice, were on the brief, Washington, D.C., for respondents.

Before RUTH BADER GINSBURG, SILBERMAN and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case concerns a rule adopted by the Nuclear Regulatory Commission (NRC or Commission) for the conduct of witness interviews in connection with NRC investigations and inspections of licensed facilities. The rule, titled "Sequestration of Witnesses Under Subpoena/Exclusion of Attorneys," permits: (1) sequestration of subpoenaed witnesses during an interview; and (2) exclusion, as counsel accompanying the interviewee, of an attorney representing "multiple interests," if the agency official conducting the inquiry has "a reasonable basis" for believing that the attorney's presence would impair the investigation. 55 Fed.Reg. 243, 247–48 (1990). Prompting the rule, the Commission stated, were instances in which the "licensee's counsel or counsel retained by the licensee has also represented [during interviews] witnesses who are employees of the licensee." *Id.* at 243. Employee witnesses, the NRC observed, "have been hesitant to divulge information against the interest of their employer in the presence of their employer's counsel or counsel retained by the employer." *Id.*

Petitioning for judicial review of the rule are several public utility companies

licensed by the NRC to own or operate nuclear power plants, and an engineering company that provides technical support to nuclear power facilities.[1] Petitioners challenge the sequestration provision as incompatible with the free speech and association guarantees of the First Amendment, and the attorney exclusion provision, as impermissible under the Administrative Procedure Act (APA) right to counsel guarantee, 5 U.S.C. § 555(b), and the due process clause of the Fifth Amendment. They also assert that the NRC, in adopting the rule, violated the APA's notice-and-comment requirements.

We reject as insubstantial the petitioners' challenge to the sequestration portion of the rule. Petitioners' APA challenge to the attorney exclusion portion of the rule, however, rests on a secure foundation. Interpreting the APA right to counsel guarantee, this court has ruled that, before an agency may exclude an attorney from representing a subpoenaed witness during an interview, the agency must come forward with "concrete evidence" that counsel's presence would impede its investigation. *SEC v. Csapo*, 533 F.2d 7, 11 (D.C.Cir. 1976). Because the NRC's "rational basis" standard is less rigorous than the "concrete evidence" requirement stated in *Csapo*, we vacate the attorney exclusion portion of the rule.

### Background

The Commission's inspections staff conducts periodic reviews of licensed nuclear facilities to determine their compliance with legal requirements, notably, relevant safety standards. When the inspections staff discovers reason to suspect safety-related wrongdoing, or when the Commission is otherwise so apprised, a separate group within the NRC, the Office of Investigations (OI), conducts an investigation. OI's primary investigatory technique is to interview employees who might have information concerning the apparent wrongdoing. Sometimes these employees come forth voluntarily; frequently, however, OI must secure their attendance at an interview by administrative subpoena.

Persons whom the OI interviews under subpoena are "entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative." 5 U.S.C. § 555(b). Because an OI finding of wrongdoing could lead to administrative sanctions against the nuclear facility, or even criminal prosecution by the Department of Justice, companies operating nuclear facilities have often provided counsel for their employees who are interviewed. On at least some occasions, the Commission has found, company attorneys have taken the position that they "would relate to the company all that took place in the interviews." According to the Commission, the presence of such attorneys or other management representatives at interviews has impeded OI's investigations, by "produc[ing] an inherent coercion on the interviewee not to reveal to the NRC information that is potentially detrimental to his employer." 53 Fed.Reg. 45769 (1988).

The NRC decided in November 1988 to address this perceived problem by proposing a rule ensuring that interviews "be conducted in an atmosphere free of outside influences." *Id.* at 45768. After receiving comments, the Commission published its final rule in January 1990. Under the rule's "sequestration" provision, witnesses and their attorneys are to be separated from other witnesses and attorneys during interviews. Under the "attorney exclusion" provision, where "a reasonable basis exists to believe that an investigation or inspection will be obstructed, impeded, or impaired, either directly or indirectly, by an

---

**1.** Professional Reactor Operator Society (PROS), an organization of reactor operators employed at nuclear power plant sites, was improperly included in the line up of petitioners. PROS, petitioners concede, did not participate in the rulemaking proceeding by submitting comments. PROS therefore does not qualify as a "party aggrieved" under the Administrative Orders Review Act, 28 U.S.C. § 2344 (Hobbs Act), which governs direct review of NRC orders. *See Simmons v. ICC*, 716 F.2d 40, 42–43 (D.C. Cir.1983). While PROS does not qualify as a petitioner, the nine other parties joining in the petition did file comments with the NRC and are in all respects qualified to maintain this review proceeding.

attorney's representation of multiple interests, the agency official may prohibit that attorney from being present during the interview." Various procedural protections apply to the attorney exclusion provision: first, the interviewing official, within five working days after the exclusion, must give to the witness and her attorney "a written statement of the reasons supporting the decision to exclude"; second, the witness may appeal the exclusion decision to the full Commission; and third, the witness may delay the interview "for a reasonable period of time to permit the retention of new counsel." 10 C.F.R. § 19.18, *reported at* 55 Fed.Reg. 243, 247–48 (1990).

### Witness Sequestration

■■■ The "sequestration" portion of the NRC's rule reads:

(a) All witnesses compelled by subpoena to submit to agency interviews shall be sequestered unless the official conducting the interviews permits otherwise.

10 C.F.R. § 19.18(a), *reported at* 55 Fed. Reg. 247 (1990). "Sequestration" is defined as "the separation or isolation of witnesses and their attorneys from other witnesses and their attorneys during an interview conducted as part of an investigation, inspection, or other inquiry." 10 C.F.R. § 19.3, *reported at* 55 Fed.Reg. 247 (1990). Petitioners challenge this part of the rule as either too sweeping to survive First Amendment scrutiny, or too inconsequential to survive review for rationality. Neither argument is tenable.

Despite the rule's defining language—that sequestration means separation "during an interview conducted as part of an investigation"—petitioners maintain that, in context, the rule could be construed to impose a vow of silence on every witness throughout the course of an entire investigation. But the Commission, in its Final Rule comments on "Sequestration," expressly stated that the rule, "neither by its terms nor in its intended application, effects a prohibition on the communications or associational rights of witnesses either before or after an interview." 55 Fed.Reg. at 244. Again, on brief, the NRC affirmed:

"[T]he provision in no way regulates or restricts witnesses' communications before or after their interviews." Final Brief for Respondents at 13.

Recognizing a point on which the sequestration rule, as written, indeed left room for doubt, the court asked counsel for the Commission at oral argument:

Let's assume that you don't prevail on the attorney disqualification rule, but you do prevail on the sequestration rule. Would that sequestration rule cover the following situation: Attorney A is representing witness X. [After] witness X concludes her testimony, ... witness Y comes in and attorney A is representing witness Y as well.... [D]o you interpret [the sequestration] rule to say you could exclude attorney A because attorney A has already been in an interview situation with a witness?

Counsel responded:

Although the rule as written presently lends itself to that interpretation, your Honor, we would not exclude attorney A from representing the subsequent witness simply because he represented an earlier witness in that same [investigation].

The court, to conclude the colloquy, asked:

So you simply interpret it as, in that very interview, you can isolate the witness? ·

Counsel replied:

Exactly.

In sum, we take it to be beyond genuine debate, based on the regulatory text and the Commission's representations to this court, that the rule on witness sequestration covers only the isolation of the witness during an interview. It does not extend to pre- or post-interview communications by or with the witness, and it does not apply to multiple representation of witnesses by the same counsel.

A rule that simply limits the contemporaneous participants in the NRC interview to NRC investigators, the witness, and his or her chosen counsel, petitioners apparently concede, does not encounter any First Amendment shoal. Instead, petitioners say, the NRC has always individually inter-

viewed witnesses, so the rule, if it means no more than that, accomplishes nothing, remains "illusory," and should be vacated on that account. *See* Petitioners' Reply at 6. We see nothing arbitrary or illusory, however, in the Commission's confirmation, by rule, that its investigators may interview witnesses separately, and out of the hearing of other witnesses.

### Attorney Exclusion

The "attorney exclusion" portion of the NRC's rule reads:

> (b) Any witness compelled by subpoena to appear at an interview during an agency inquiry may be accompanied, represented, and advised by counsel of his or her choice; however, when the agency official conducting the inquiry determines, after consultation with the Office of the General Counsel, that a reasonable basis exists to believe that the investigation or inspection will be obstructed, impeded or impaired, either directly or indirectly, by an attorney's representation of multiple interests, the agency official may prohibit that attorney from being present during the interview.

10 C.F.R. § 19.18(b), *reported at* 55 Fed. Reg. 247–48 (1990). The congressional instruction against which we evaluate the NRC's rule, section 6(a) of the APA, reads:

> A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel....

5 U.S.C. § 555(b).

■ As an initial matter, we reject the NRC's contention that, in measuring its rule against the controlling APA prescription, we must apply a "narrow and deferential standard of review." Final Brief for Respondents at 14. It is true that, in reviewing an agency's interpretation of a statute Congress has entrusted it to administer, we accord the agency substantial deference. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The Supreme Court has indicated, however, that reviewing courts do not owe the same deference to an agency's interpretation of statutes that, like the APA, are outside the agency's particular expertise and special charge to administer. *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 110 S.Ct. 1384, 1390–91, 108 L.Ed.2d 585 (1990) (stating that *Chevron* deference to agency interpretation of statute would be inappropriate, because agency did not administer that statute); *Crandon v. United States*, 494 U.S. 152, ——, 110 S.Ct. 997, 1010, 108 L.Ed.2d 132 (1990) (Scalia, J., concurring) (rejecting *Chevron* deference, because statute in question "is not administered by any agency but by the courts"); *Air North Am. v. Department of Transp.*, 937 F.2d 1427, 1436–1437 (9th Cir. 1991) (no *Chevron* deference to agency interpretation of APA, because agency not assigned special role by Congress in construing that statute).

■ Turning to the merits of the petitioners' challenge, the path we follow in this case is marked out for us by *SEC v. Csapo*, 533 F.2d 7 (D.C.Cir.1976). The Securities and Exchange Commission in that case sought to enforce a rule similar to the one at issue here. The SEC's rule allowed the officer conducting an investigation to exclude as counsel for a subpoenaed witness lawyers who had already appeared before the officer as counsel for another witness. Measuring the SEC's rule against the APA right-to-counsel guarantee, this court found the congressional mandate "clear," and the SEC's assertion of authority to disqualify attorneys under its rule, "plainly inconsistent" with the privilege of the witness "phrased by the legislature in unequivocal terms." 533 F.2d at 10–11. To adjust the SEC's investigatory procedure to the governing APA provision, the *Csapo* court directed: "[B]efore the SEC may exclude an attorney from its proceedings, it must come forth ... with 'concrete evidence' that his presence would obstruct and impede its investigation." *Id.* at 10.

The NRC, in its Final Rule comments on "Exclusion of Counsel" candidly acknowledged that its "reasonable basis" standard was "less exacting" than the "concrete evidence" standard of *Csapo*. 55 Fed.Reg. at

245. To justify the greater authority it claimed for its investigators, the NRC pointed to the different statutory responsibilities of the two agencies. The NRC stated:

Impeding an SEC investigation, while serious, does not have substantial, immediate public health and safety implications. In contrast, undetected violations of [NRC] regulations or the Atomic Energy Act could have far reaching public health and safety implications.

*Id.* The importance of protecting the public health and safety, the NRC concluded, warrants "use of a less stringent standard." *Id. See also* Final Brief for Respondents at 19 (contrasting "the financial losses that might occur if an SEC investigation is impeded," with "the frightening consequences of an NRC failure to uncover nuclear safety hazards").

The NRC invites a comparison Congress has not commissioned us to make. The APA establishes a "simple and standard plan of administrative procedure," S.Rep.No. 752, 79th Cong., 1st Sess. 1 (1945), one "meant to be operative 'across the board' in accordance with its terms." H.R.Rep. No. 1980, 79th Cong., 2d Sess. 16 (1946). If the right to counsel at investigatory interviews is to expand or contract depending on the mission of the agency, Congress must say so "expressly." *See* 5 U.S.C. § 559. Our current instruction, however, is to apply the APA prescription "equally to agencies and persons." *Id.*

The NRC stresses that it has brigaded its rule with "protective procedures": notably, the official conducting the inquiry must consult with the Office of General Counsel and provide a written statement of reasons for exclusion to both witness and counsel; furthermore, the witness may challenge the exclusion decision before the full Commission (and thereafter in court). *See* 55 Fed.Reg. at 244, 246, 248; Final Brief for Respondents at 20–22. The procedural protections, while commendably augmented by the NRC in response to comments, do not change the character of the standard that the Commission has set. By the Commission's own forthright admission, that standard does not measure up to the one we have held to be the APA-guaranteed personal right of the witness.

We note finally that, although the Commission vigorously defends its less confining "reasonable basis" test, the NRC also predicts: "[I]n virtually all cases where the Commission may find it necessary to exclude a particular counsel ... it is not unlikely that the reasonable basis for so doing will in fact amount to 'concrete evidence' that otherwise the investigation will be impaired." Final Brief for Respondents at 19. This NRC forecast suggests that the Commission has no strongly compelling need for a standard less protective of individual rights than the one stated in *Csapo.*

### Conclusion

For the reasons stated, the petition for review is denied in part and granted in part. We uphold the sequestration portion of the Commission's rule, vacate the portion on attorney exclusion, and remand the matter to the Commission for further consideration consistent with this opinion.[2]

*It is so ordered.*

2. Because we have vacated the attorney exclusion provision, we need not reach the petitioners' notice-and-comment challenge to that part of the rule. Nor need we reach the petitioners' parallel challenge to the sequestration provision. We understand that portion of the rule to mean only that the NRC may exclude from interviews persons other than the witness and her attorney; petitioners concede that this has been NRC's uncontroversial "routine practice" and that it is fully consistent with the APA right to counsel. *See* Petitioners' Reply at 6–7. Thus, even if the NRC had violated the APA's notice and comment provisions, a point we do not decide, remand for comment on an issue not genuinely in dispute would be a pointless exercise.