**N STREET FOLLIES LIMITED PARTNERSHIP, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

**Tabard Corporation, Intervenor.**

No. 07–AA–362.

District of Columbia Court of Appeals.

Argued May 14, 2008.

Decided June 5, 2008.

participated in the proceedings before the

Board, nor the proceedings before this court.

George R. Keys, Jr., Washington, DC, for petitioner.

Linda Singer, Attorney General for the District of Columbia at the time the statement was filed, Todd S. Kim, Solicitor General, Edward E. Schwab, Deputy Solicitor General at the time the statement was filed, and Pastell Vann, Senior Assistant Attorney General, filed a statement in lieu of brief, for respondent.

Kinley R. Dumas with whom Richard B. Nettler, Washington, DC, was on the brief, for intervenor.

Before REID and BLACKBURNE–RIGSBY, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Petitioner N Street Follies Limited Partnership seeks review of a final decision and order of the District of Columbia Board of Zoning Adjustment, which dismissed its application for special exception and variance relief as moot. N Street Follies argues that the agency erred as a matter of law and acted arbitrarily and capriciously in concluding that its application was moot. We reverse.

## I.

### Background

Petitioner wants to build a hotel on several lots that it owns in the 1700 block of N Street, Northwest. The nature of this project requires petitioner to seek approval from both the Board of Zoning Adjustment ("BZA") and the Mayor, who is advised by the Historic Preservation Review Board ("HPRB"), before the required building permit can issue. *See* D.C.Code § 6–641.09 (2007 Supp.); 11 DCMR § 3202.1 (2003). Intervenor Tabard Corporation owns the Tabard Inn on the same

block as petitioner's proposed hotel and opposes its construction.

Because petitioner's design plans require special exceptions and variances from the Zoning Regulations, the BZA must approve the construction project. *See* D.C.Code § 6–641.07 (2001); 11 DCMR § 3100.1 (2003). Similarly, because petitioner's lots are located in the Dupont Circle Overlay District, *see* 11 DCMR § 1501.2 (2003), this construction project must be approved by the Mayor pursuant to the Historic Protection Act, D.C.Code §§ 6–1101 to –1115 (2007 Supp.); 51 D.C.Reg. 7447 (July 30, 2004), to be codified at 10A DCMR § 303.1. The authority to issue permits for construction in historic areas has been delegated to the Mayor's Agent, who refers applications to the Historic Preservation Review Board for advice. 51 D.C.Reg. 7447 (July 30, 2004), to be codified at 10A DCMR §§ 103.1, 104.1, 104.2.

On March 31, 2005, petitioner filed an application with the BZA seeking three special exceptions and three variances from the Zoning Regulations. *See* D.C.Code § 6–641.07 (2001); 11 DCMR § 3100.1 (2003). Petitioner's application included detailed plans for the hotel project. Several parties entered appearances before the BZA in opposition to the application, including Tabard.

Several weeks later on May 25, 2005, petitioner submitted its design plans to the HPRB and requested that it conduct a "conceptual design review." A conceptual design review is a "process that allows an applicant to obtain informal guidance and a finding of general consistency with the purposes of the Act from the Board on a project without the necessity of preparing a finished architectural design or obtaining prior approval from the Zoning Administrator." 51 D.C.Reg. 7447 (July 30, 2004),

to be codified at 10A DCMR § 9901. The purpose of a conceptual design review "is to allow applicants to benefit from the guidance of the Review Board ... in advance of a permit application, ... and take action at an early stage of design." *Id.* at § 301.2. Notably, "[a]n application for conceptual design review does not constitute a permit application ... [and] is not subject to review by the Mayor's Agent...." *Id.* at § 301.3.

After filing its two applications, petitioner met with various groups. Based on their concerns and suggestions, petitioner changed its design plans, which reduced the number of special exceptions and variances it needed. Petitioner then submitted its revised plans to both the BZA and HPRB.

The BZA conducted a hearing on petitioner's revised plans on January 24, 2006. During this hearing, petitioner presented its case and the District of Columbia Office of Planning presented its report. Because there was not enough time for the opposers to present their case, the hearing was continued until February 28, 2006.

At a public hearing on February 23, 2006, the HPRB adopted the Historic Preservation Office[1] staff report and rejected the conceptual design proposal. Petitioner has not filed a formal permit application with the HPRB. In light of this decision, petitioner requested that the BZA hearing be continued.

When the BZA hearing resumed on June 27, 2006, Tabard made an oral motion to dismiss petitioner's application as moot. The corporation argued that both the BZA and the HPRB needed to approve petitioner's plans and that petitioner's BZA application was moot because the HPRB had already rejected the revised plans. Even if the BZA approved petitioner's design plans, Tabard contended that a building permit for the hotel project could still not issue because the revised plans had already been rejected by the HPRB. Therefore, Tabard argued that petitioner was required to resubmit new applications with new design plans to both the BZA and HPRB. After extended discussion, the BZA granted Tabard's motion and dismissed petitioner's application as moot. In its final decision and order, the BZA explained:

> The Applicant is requesting that this Board grant the special exceptions and variances needed to construct and operate a hotel in a DC/SP–1 zone district. Subsection 3125.7 of the Board's Rules of Practice and Procedure provides that approval of an application shall include approval of the plans submitted with the application unless the Board provides otherwise. In addition, applicants are "required to carry out the construction, renovation, or alteration only in accordance with the plans approved by the Board, unless the Board orders otherwise." 11 DCMR § 3125.8 Thus, if this Board were to grant the relief requested, any application for a building permit to construct this project must be accompanied by the revised plans filed in this case, which are the same plans rejected by the HPRB on a conceptual basis. The project cannot be built in accordance with these plans without HPRB's approval. Although there is nothing to prevent the HPRB, once it formally receives these plans, from recommending that the Mayor issue a building permit, the record and common sense suggests [sic] that this is unlikely to happen.

---

1. The staff of the Historic Preservation Office provides technical and administrative support to the HPRB. *See* 51 D.C.Reg. 7447 (July 30, 2004), to be codified at 10A DCMR §§ 107.1, 107.2.

Moreover, if this were to occur, then nothing in this decision would preclude the Applicant from seeking relief form the Board at that time.

It has been held that "a case is moot when the legal issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome. *See Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (citations omitted)"; *Cropp v. Williams,* 841 A.2d 328 (D.C.2004). The legal issue in this case is whether zoning relief should be granted based upon the plans submitted. Since those plans are moribund, if not deceased, there is no "live" legal issue left to be decided.

## II.

### Discussion

■■■■ When reviewing BZA decisions, we will generally "defer to the Board's findings and will not second-guess the Board's decision unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " *Basken v. District of Columbia Bd. of Zoning Adjustment,* No. 06–AA–379, 946 A.2d 356, 362, 2008 D.C.App. Lexis 215, at *15 (D.C. Apr. 18, 2008) (quoting *Citizens Ass'n of Georgetown v. District of Columbia Bd. of Zoning Adjustment,* 925 A.2d 585, 589 (D.C.2007)). We uphold the BZA's factual findings when "they are based on substantial evidence in the record as a whole." *Kalorama Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 934 A.2d 393, 400 (D.C.2007) (quoting *George Washington Univ. v. District of Columbia Bd. of Zoning Adjustment,* 831 A.2d 921, 931 (D.C.2003), and D.C.Code § 2–510(a) (2001)). "Substantial evidence is relevant evidence which a reasonable trier of fact would find adequate to support a conclusion." *Citizens Ass'n of Georgetown, supra,* 925 A.2d at 589 (quoting *Giles v.*

*District of Columbia Dep't of Employment Servs.,* 758 A.2d 522, 524 (D.C.2000)). "[T]he ultimate responsibility for deciding questions of law is assigned to this court." *George Washington Univ., supra,* 831 A.2d at 931 (citation omitted).

■■■■ We give weight to the BZA's construction of statutes which it administers. *Id.* "The Supreme Court has indicated, however, that reviewing courts do not owe the same deference to an agency's interpretation of statutes that . . . are outside the agency's particular expertise and special charge to administer." *Prof'l Reactor Operator Soc. v. United States Nuclear Regulatory Comm'n,* 291 U.S.App.D.C. 219, 223, 939 F.2d 1047, 1051 (1991) (citing *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990)).

■■■■ As an initial matter, the BZA has the authority to dismiss an application on mootness grounds. Although the BZA does not have a procedural rule permitting an application be dismissed as moot, "this court looks favorably on an agency's decision to adopt procedures employed by the courts of the District of Columbia when there is no applicable regulation." *Felicity's, Inc. v. District of Columbia Bd. of Appeals & Review,* 851 A.2d 497, 501 (D.C. 2004) (citing *Stancil v. District of Columbia Rental Hous. Comm'n,* 806 A.2d 622, 625 (D.C.2002)); *see also Mullin v. District of Columbia Rental Hous. Comm'n,* 844 A.2d 1138, 1141 (D.C.2004) (holding that an agency has inherent authority to dismiss a case).

■■■■ "A case is moot when the legal issues presented are no longer 'live' or when the parties lack a legally cognizable interest in the outcome." *Thorn v. Walker,* 912 A.2d 1192, 1195 (D.C.2006) (quoting *Cropp v. Williams,* 841 A.2d 328, 330 (D.C. 2004)) (other citations omitted); *see also Settlemire v. District of Columbia Office of*

*Employee Appeals,* 898 A.2d 902, 904–05 (D.C.2006). If a tribunal "is asked to decide only abstract or academic issues," a case is also moot because there is no justiciable controversy. *Id.* "The central question is nonetheless constant-whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." 13A C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533, at 212 (1984) (hereinafter WRIGHT & MILLER). Whether a case is moot is a question of law.

■ The BZA dismissed petitioner's application as moot after the HPRB denied conceptual review approval of the project. The BZA explained that the "project cannot be built in accordance with these plans without HPRB's approval." Noting that the HPRB did not formally consider petitioner's design plans, the BZA stated that "the record and common sense suggests [sic] that [HPRB approval] is unlikely to happen." Because of this, the BZA concluded that even if it approved petitioner's plans, the hotel could not be built according to the plans submitted since the HPRB had already rejected them. Therefore, the BZA concluded that its review of petitioner's application was moot and it dismissed the application.

We hold that the BZA erred as a matter of law in concluding that petitioner's application was moot because petitioner's design plans were not formally rejected under the Historic Protection Act and because the record lacks substantial evidence to support the BZA's conclusion.

The Historic Protection Act requires the Mayor to approve construction projects in historic areas. D.C.Code §§ 6–1101 to –1115 (2007 Supp.). Applications for construction in historic areas are filed with the Department of Consumer and Regulatory Affairs and then are referred to the HPRB for advice. 51 D.C.Reg. 7447 (July 30, 2004), to be codified at 10A DCMR §§ 104.2, 306.1. The HPRB conducts a hearing and solicits input from a variety of interested parties. *Id.* at §§ 3100.1 to 3103.3. When the HPRB recommends against approving a project, the applicant has the right to request a public evidentiary hearing before the Mayor's Agent. *See id.* at § 404.1; *see also Reneau v. District of Columbia,* 676 A.2d 913, 915 (D.C.1996); *Kalorama Heights Ltd. P'ship v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 655 A.2d 865, 868 (D.C.1995). "The Mayor's Agent shall make the final determination on the approval or denial of applications for demolition, alteration, new construction, and subdivision subject to the Historic Protection Act...." *Id.* at § 400.1. In addition to reviewing formal applications, the HPRB is authorized to conduct informal conceptual design reviews, which petitioner requested here. *Id.* at § 301.1 to 301.3. Because conceptual design reviews are not binding, "[t]he Mayor's Agent shall take no action on applications for conceptual design review." *Id.* at § 400.5. Ultimately, the regulations make clear that the final authority for approving applications for construction in historic areas under the Historic Protection Act rests with the Mayor's Agent, not the HPRB. Thus, the BZA erred when it concluded that the HPRB's approval is required. The HPRB's denial of petitioner's plans during a conceptual design review does not foreclose the HPRB or the Mayor's Agent from approving the same or modified plans once a formal application is filed. Therefore, the petitioner's BZA application is not moot. Similarly, because it is not a final decision, HPRB's action is not ripe for adjudication before a court, *see* D.C.Code § 2–510 (2001), and *a fortiori* should not have influenced the BZA's consideration of petitioner's application.

Some courts have held that cases which are technically not moot may be dismissed as too attenuated to be justiciable. The District of Columbia Circuit has explained: "Under the doctrine of attenuation, a court may indeed, upon prudential grounds, refuse to entertain a suit which, while not actually moot, is so attenuated that considerations of prudence and comity ∴ . counsel the court to stay its hand, and to withhold relief it has power to grant." *Ukrainian–American Bar Ass'n, Inc. v. Baker,* 282 U.S.App.D.C. 225, 229, 893 F.2d 1374, 1377 (1990) (quoting *Community for Creative Non–Violence v. Hess,* 240 U.S.App.D.C. 321, 324, 745 F.2d 697, 700 (1984), and *Chamber of Commerce v. United States Dep't of Energy,* 200 U.S.App. D.C. 236, 238, 627 F.2d 289, 291 (1980)) (quotations omitted); *see also* WRIGHT & MILLER, *supra,* at § 3533.3, at 276 (noting that "futility or impossibility of effective relief need not be certain; a high degree of probability is often found, and rightly supports a finding of mootness"). Based on its experience and common sense, the BZA explained that it is "unlikely" that the HPRB or the Mayor's Agent would approve petitioner's design plans after the HPRB had rejected them during the conceptual design review.

Assuming without deciding that attenuation is sufficient grounds to dismiss an application, here there is no substantial evidence in the record to support the BZA's conclusion that petitioner's plans are "moribund, if not deceased" because they were not approved by the HPRB during the conceptual design review. Indeed, the HPRB's decision is not even a part of the BZA's record. We know of no regulation requiring petitioner to seek HPRB approval before the BZA may approve its application. Moreover, because the Historic Protection Act is not within the purview of the BZA, the BZA's conclusion that another agency is unlikely to approve a future application is not entitled to deference. At best, the BZA's dismissal was based upon anticipatory mootness. Here, petitioner has properly filed its application for zoning relief before the BZA and has the right to have its application decided on the merits. Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

*So ordered.*