7 F.3d 1487
 The BUILDING AND CONSTRUCTION DEPARTMENT; AFL-CIO; The
Colorado Building and Construction Trades Council; Patrick
F. Kelly and Virgil A. Owen, individually, and as
representatives of a class of all former employees of Rocky
Flats Nuclear Weapons Plant, and John M. Amador, Jack D.
Bloom, Roger Saxton, individually, and as representatives of
a class of the members of The Colorado Building and
Construction Trades Council, Plaintiffs-Appellants,
v.
ROCKWELL INTERNATIONAL CORPORATION, a Delaware corporation;
and The Dow Chemical Company, a Delaware
corporation, Defendants-Appellees.
 No. 91-1163.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 26, 1993.
Rehearing Denied Dec. 20, 1993.
 
 Ronald Simon (Bruce H. DeBoskey and Steven W. Kelly, of Silver & DeBoskey, P.C., Denver, CO, Merrill Davidoff, Daniel Berger, Peter Nordberg, and Andrew Brenner, of Berger & Montague, P.C., Philadelphia, PA, and Stanley M. Chesley, Louise Roselle, and Paul DeMarco, of Waite, Schneider, Bayless & Chesley, Cincinnati, OH, with him on the briefs), of Connerton, Ray and Simon, Washington, DC, for plaintiffs-appellants.
 David M. Bernick (Michael R. Power, of Kirkland & Ellis, Chicago, IL, Mark S. Lillie, of Kirkland & Ellis, Denver, CO, and Louis W. Pribila, Alfred E. Schretter, and Sydney Rooks, of The Dow Chemical Co., Midland, MI, on the brief), of Kirkland & Ellis, Chicago, IL, for defendant-appellee The Dow Chemical Co.
 John D. Aldock (Joseph J. Bronesky, of Sherman & Howard, Denver, CO, and Franklin D. Kramer and Mark S. Raffman, of Shea & Gardner, Washington, DC, with him on the brief), of Shea & Gardner, Washington, DC, for defendant-appellee Rockwell Intern. Corp.
 Bruce H. DeBoskey and Steven W. Kelly, of Silver & DeBoskey, P.C., Denver, CO, Stanley M. Chesley, of Waite, Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, OH, Merrill G. Davidoff, Daniel Berger and Peter Nordberg, of Berger & Montague, P.C., Philadelphia, PA, and Ronald Simon, of Connerton, Ray & Simon, Washington, DC, on the joint brief on mootness, for plaintiffs-appellants.
 David M. Bernick, Mark S. Lillie and Lester C. Houtz, of Kirkland & Ellis, Joseph J. Bronesky and Christopher Lane, of Sherman & Howard, Denver, CO, and Franklin D. Kramer and Patrick M. Hanlon, of Shea & Gardner, Washington, DC, on the joint brief on mootness, for defendants-appellees.
 Before MOORE and TACHA, Circuit Judges, and HUNTER, District Judge.*
 TACHA, Circuit Judge.
 
 
 1
 Plaintiffs appeal the district court's grant of summary judgment dismissing their claims for medical monitoring brought under the Price-Anderson Act. The district court held that such claims were barred under the exclusivity provisions of the Colorado Workmen's Compensation Act. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's grant of summary judgment for defendants.
 
 I. Background
 
 2
 This litigation has a long history. Plaintiffs are current and former employees ("employee plaintiffs") of the Rocky Flats Nuclear Weapons Plant in Golden, Colorado and two labor organizations ("union plaintiffs") some of whose members work at the Rocky Flats plant.[1] The gravamen of plaintiffs' complaint is that defendants Rockwell International Corporation ("Rockwell") and Dow Chemical Company ("Dow") engaged in misconduct at Rocky Flats which exposed employees to unsafe levels of radioactive and non-radioactive hazardous substances. As relief, plaintiffs seek the establishment of a court supervised fund to finance a program of medical monitoring for affected workers.[2]
 
 
 3
 Plaintiffs brought suit under the Price-Anderson Act, 42 U.S.C. § 2210, which provides for federal jurisdiction over claims for damages against government contractors "arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n)(2). Defendants moved to dismiss the action under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. Because defendants' motion considered matters not raised in the pleadings, however, the district court treated it as a motion for summary judgment. Applying Colorado substantive law as directed by the Price-Anderson Act[3], the district court granted summary judgment for defendants finding that the Colorado Workmen's Compensation Act barred plaintiffs' claim for medical monitoring. Plaintiffs appealed.
 
 
 4
 On appeal, this court determined that review of the district court's decision turned on an important question of Colorado law not yet addressed by the Supreme Court of Colorado and, on April 9, 1992, certified the following question to that court:
 
 
 5
 In a suit brought by employees of a nuclear facility who allegedly have been exposed to hazardous materials, does a claim for medical monitoring fall within the exclusive remedy provision of the Colorado Workmen's Compensation Act, Colo.Rev.Stat.Ann. §§ 8-42-102, 8-52-102?While this question was pending before the Supreme Court of Colorado, Congress passed the National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102-484, 106 Stat. 2315 (1992). This legislation directed the Department of Energy (DOE), in consultation with various other federal agencies, to establish a medical monitoring program for former and current workers at DOE facilities who are at increased health risk due to exposure to hazardous or radioactive substances. After apparently finding plaintiffs' suit moot in light of the National Defense Authorization Act, the Supreme Court of Colorado declined to answer the certified state law question thus leaving it open. It is in this light that we find the case back before this court.
 
 II. Mootness
 
 6
 We first review the question of whether plaintiffs' suit for medical monitoring is mooted by the National Defense Authorization Act for Fiscal Year 1993. Because it is a matter of federal jurisdiction, our review is de novo without regard to the Supreme Court of Colorado's determination on the mootness issue. We find that plaintiffs' suit is not moot.
 
 
 7
 Constitutional mootness doctrine is grounded in the Article III requirement that federal courts only decide "actual, ongoing cases or controversies." Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). Litigation may become constitutionally moot even during the pendency of an appeal. See United States v. Munsingwear, Inc., 340 U.S. 36, 39, 71 S.Ct. 104, 106, 95 L.Ed. 36 (1950). However, the conditions under which a suit will be found constitutionally moot are stringent. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). In elaborating on this principle, the Supreme Court has said that a case properly brought in the first instance only becomes moot where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). See also 13A Charles A. Wright et al., Federal Practice and Procedure § 3533.1 at 220-21 (2d ed. 1984) (stating that "a suit remains justiciable despite a strong probability that a mooting event will soon occur").
 
 
 8
 The test for constitutional mootness is not met in this case. The National Defense Authorization Act for Fiscal Year 1993, passed by Congress during the pendency of this appeal, includes the following provision codified at 42 U.S.C. § 7274i:
 
 
 9
 § 7274i. Program to monitor department of energy workers exposed to hazardous and radioactive substances
 
 
 10
 (a) In general
 
 
 11
 The Secretary shall establish and carry out a program for the identification and on-going medical evaluation of current and former Department of Energy employees who are subject to significant health risks as a result of the exposure of such employees to hazardous or radioactive substances during such employment.
 
 
 12
 However, the section goes on only to provide for the barest outlines of such a program. It directs the Secretary of Energy in consultation with the Secretary of Health and Human Services and other officials to define the parameters of medical monitoring. It leaves open the essential questions of what hazardous substances will be covered, what level of exposure will be deemed significant, and what medical monitoring procedures will be provided. 42 U.S.C. § 7274i(b)(1)-(4). In sum, it is simply not clear that this program will address the concerns raised by plaintiffs in this suit. See Day v. NLO, Inc., 814 F.Supp. 646, 654 (S.D.Ohio 1993) (stating that "many factors of the Congressional medical monitoring program are yet to be determined"). Under such circumstances we cannot say that the issues presented in this case are no longer "live" or that the parties "lack a legally cognizable interest in the outcome." Powell, 395 U.S. at 496, 89 S.Ct. at 1951.
 
 
 13
 Defendants Rockwell and Dow nevertheless urge the court to find plaintiffs' claims moot under the doctrine of "remedial" or "prudential mootness." This doctrine holds that "[i]n some circumstances, a controversy, not [constitutionally] moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." Chamber of Commerce v. United States Dep't of Energy, 627 F.2d 289, 291 (D.C.Cir.1980); see also A.L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961); United States v. W.T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). This court expressly recognized the prudential mootness concept in New Mexico v. Goldschmidt, 629 F.2d 665, 669 (10th Cir.1980). However, to argue that prudential mootness is apposite to the suit at issue here is to misconstrue its application.
 
 
 14
 All the cases in which the prudential mootness concept has been applied have involved a request for prospective equitable relief by declaratory judgment or injunction. See, e.g., Goldschmidt; A.L. Mechling Barge Lines; W.T. Grant Co.; Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011 (D.C.Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1513, 117 L.Ed.2d 650 (1992); City of New York v. Baker, 878 F.2d 507 (D.C.Cir.1989); Chamber of Commerce. In such cases a court may decline to grant declaratory or injunctive relief where it appears that a defendant, usually the government, has already changed or is in the process of changing its policies or where it appears that any repeat of the actions in question is otherwise highly unlikely. See W.T. Grant Co., 345 U.S. at 633, 73 S.Ct. at 898 (the Supreme Court's original formulation of the test for prudential mootness holds that "the moving party must satisfy the court that ... there exists some cognizable danger of recurrent violation, something more than mere possibility which serves to keep the case alive"). Thus prudential mootness arises out of the court's general discretion in formulating prospective equitable remedies, especially with regard to the government of the United States where "considerations of ... comity for coordinate branches of government" come into play. Chamber of Commerce, 627 F.2d at 291; see also Goldschmidt, 629 F.2d at 669 ("The doctrine of remedial mootness would appear to have particular applicability to the instant appeal in its present posture [as a request for injunctive relief against the government].").
 
 
 15
 Obviously, the suit at issue here is very different from those in which prudential mootness has been applied. It is essentially a suit for damages against private defendants as a remedy for past misconduct. Thus, the doctrine of prudential mootness does not apply.
 
 
 16
 III. District Court's Grant of Summary Judgment
 
 
 17
 We now reach the merits of plaintiffs' appeal. The district court granted summary judgment for defendants, holding that plaintiffs' claims for medical monitoring are barred by the exclusivity provisions of the Colorado Workmen's Compensation Act. We review the district court's grant of summary judgment de novo, Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988), and must determine if defendants as the moving parties have met their burden of showing a lack of any genuine issue of material fact such that they are entitled to judgment as a matter of law.[4] Fed.R.Civ.P. 56.
 
 
 18
 A. Coverage of Colorado Workmen's Compensation Act
 
 
 19
 Plaintiffs first contend that the district court erred in holding that plaintiffs' claims for medical monitoring fall under the exclusivity provisions of the Colorado Workmen's Compensation Act ("the Act"). The Act provides that:
 
 
 20
 An employer who has complied with the provisions of articles 40 to 54 of this title, including the provisions relating to insurance, shall not be subject to ... liability for the death of or personal injury to any employee, except as provided in said articles; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such death of or personal injury to any such employee and accruing to any person are abolished except as provided in said articles.
 
 
 21
 Colo.Rev.Stat. § 8-42-102 (1986).[5] The district court found and there is no real dispute that Rockwell met the requirements of the Act during the period in question so as to bring employees at Rocky Flats under the provisions of § 8-42-102.[6] See Stewart v. United States, 716 F.2d 755, 764 (10th Cir.1982), cert. denied, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984) (finding that Rockwell maintained workers' compensation insurance at Rocky Flats).
 
 
 22
 Plaintiffs, however, assert that the injuries in question do not come under the exclusivity provisions of the Act for the following reasons: 1) that a claim for medical monitoring is not an action for "personal injury" under the worker's compensation statute; 2) that since a medical monitoring claim is not compensable under Colorado worker's compensation law, such a claim is not covered by the Act and cannot be barred as a matter of due process; 3) that the alleged intentional and reckless conduct of defendants subjects them to an exception to the Act's exclusivity provisions; 4) that plaintiffs' claims against Dow should not be dismissed because Dow was not an "employer" at the time of employee plaintiffs' exposure to hazardous substances; and 5) that dismissal of union plaintiffs' claims was error because they sue on their own behalf and not solely on behalf of employee plaintiffs. We address these arguments in turn.
 
 
 23
 (1)
 
 
 24
 We begin here with the principle annunciated by the Supreme Court of Colorado that "[t]he Workmen's Compensation Act should be given a liberal construction because its purpose is highly remedial and beneficent." In re Question Submitted by the United States Court of Appeals for the Tenth Circuit, 759 P.2d 17, 26 (Colo.), rev'd sub nom. on other grounds, Tolbert v. Martin Marietta Corp., 858 F.2d 1479 (10th Cir.1988); see also Stewart, 716 F.2d at 763 ("The Act is to be broadly and liberally construed to achieve its salutary purposes."). This means that, where an employer-employee relationship exists under the Act, and where the employer qualifies under the Act, the immunity from common-law suits granted to the employer by the Act should be broadly construed.
 
 
 25
 In this light, we find that a claim for medical monitoring falls under the "personal injury" umbrella for purposes of the Colorado Workmen's Compensation Act. The Third Circuit has characterized a claim for medical monitoring as involving four essential elements:
 
 
 26
 1. Plaintiff was significantly exposed to a proven hazardous substance through the negligent actions of the defendant.
 
 
 27
 2. As a proximate result of exposure, plaintiff suffers a significantly increased risk of contracting a serious latent disease.
 
 
 28
 3. That increased risk makes periodic diagnostic medical examinations reasonably necessary.
 
 
 29
 4. Monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.
 
 
 30
 In Re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 852 (3d Cir.1990), cert. denied, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991). This definition is generally in accord with how other courts have characterized medical monitoring claims. See Abuan v. General Elec. Co., 3 F.3d 329 at 334 (9th Cir.1993); Hagerty v. L & L Marine Servs., Inc., 788 F.2d 315, 319 (5th Cir.1986); Hansen v. Mountain Fuel Supply Co., 858 P.2d 970 at 976, 977 (Utah 1993); Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287, 312-313 (1987). As plaintiffs point out, such claims require neither the present manifestation of physical injury nor any ultimate actual physical injury. However, it is clear from the nature of the medical monitoring claim that it is best characterized as a "personal injury" claim broadly defined under the Act. Such claims arise primarily out of the risk of latent manifestation of physical injury from exposure to toxic substances and not out of some purely economic or property loss.[7]
 
 
 31
 (2)
 
 
 32
 Plaintiffs alternatively assert that, if medical monitoring costs are not provided for under the Colorado Workmen's Compensation Act, the Act does not limit common-law medical monitoring recovery. This assertion is incorrect. The expansive wording of the statute controls here. The statute provides that where a personal injury arises out of an employment situation "all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such ... personal injury to [an] employee and accruing to any person are abolished except as provided in said articles." Colo.Rev.Stat. § 8-42-102 (1986) (emphasis added). It is clear under this language that "if [an] injury itself comes within the coverage formula, an action for damages is barred even although [a] particular element of damage is not compensated for." 2A Arthur Larson, The Law of Workmen's Compensation § 65.00 at 12-1 (1993) (commenting on worker's compensation laws in general and pointing to damages for "disfigurement in some states, impotency, or pain and suffering" as examples of kinds of damages not allowed for under worker's compensation schemes); see also Silkwood v. Kerr-McGee Corp., 667 F.2d 908, 919-20 (10th Cir.1981) (interpreting Oklahoma law and holding that "[t]he fact the Act does not compensate for every aspect and degree of the injury makes no difference"), rev'd on other grounds, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).
 
 
 33
 Plaintiffs cite several cases in support of the proposition that coverage of the Act's exclusivity provisions must mirror remedies provided under the Act. However, these cases support only the uncontroversial principle that there must be an employer-employee relationship and that an injury must "arise out of" the employment before a plaintiff is limited to the remedies provided under the Act. See Thomas v. Farnsworth Chambers Co., 286 F.2d 270, 273 (10th Cir.1960); In re Question Submitted, 759 P.2d at 20; Buzard v. Super Walls, Inc., 681 P.2d 520, 523 (Colo.1984); Krueger v. Merriman Elec., 29 Colo.App. 492, 488 P.2d 228, 232 (1971).
 
 
 34
 This Court is not unsympathetic to the position in which plaintiffs find themselves. However, the Colorado legislature has granted employers broad immunity from common law liability in favor of defined statutory liability under the Colorado Workmen's Compensation Act. What remedies are available under the Act in lieu of common law remedies is up to the Colorado legislature.
 
 
 35
 We reject plaintiffs' further argument that due process concerns prohibit applying the Act's exclusivity provisions where the Act would not provide a remedy. It has long been recognized that legislatures have broad power to adjust relations between employers and employees under worker's compensation principles. See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976) ("It is ... well established that legislative Acts adjusting the burdens and benefits of economic life [carry] a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."). Further, as the district court pointed out, the value plaintiffs receive in return for abrogation of their common-law rights under the Act is the right to the protections of the general compensation scheme provided for under the Act. Building & Constr. Trades Dep't, AFL-CIO v. Rockwell Int'l Corp., 756 F.Supp. 492, 497 (D.Colo.1991).
 
 
 36
 (3)
 
 
 37
 We also decline, as we have declined in the past, Eason v. Frontier Air Lines, Inc., 636 F.2d 293, 294 (10th Cir.1981), to create an intentional tort exception to the exclusivity provisions of the Colorado Workmen's Compensation Act as is urged by plaintiffs. No such exception has been recognized by the Colorado courts, and the wording of the Colorado statute suggests no intent on the part of the Colorado legislature to create such an exception. Other state statutes have expressly recognized an intentional tort exception to the exclusivity of worker's compensation. See, e.g. Handley v. Union Carbide Corp., 804 F.2d 265, 266 (4th Cir.1986) (pointing to an express exception in West Virginia law); Shearer v. Homestake Mining Co., 727 F.2d 707, 708 (8th Cir.1984) (discussing an express exception in South Dakota law). By contrast the Colorado statute provides that "all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies" are barred except those provided in the statute. Colo.Rev.Stat. § 8-42-102 (1986) (emphasis added).
 
 
 38
 (4)
 
 
 39
 Plaintiffs next assert that, even if their suit against Rockwell is barred, their claims against Dow should be allowed to go forward. Plaintiffs argue that Dow should not be considered an "employer" so as to trigger the exclusivity provisions of the Act because, although Dow's alleged mishandling of hazardous substances contributed to worker exposure, the exposure did not actually occur until after Rockwell took over the plant. However, plaintiffs' suit against Dow is barred by the statutory immunity provision of Colo.Rev.Stat. § 8-48-101(2). The Colorado statute provides that where a contractor (here Rockwell) maintains insurance under the worker's compensation system, employees of that contractor may not maintain a cause of action against the contracting party (here the United States government) or against the contracting party's "employees, servants, or agents." Colo.Rev.Stat. § 8-48-101(2) (1986). This statutory immunity encompasses a former contractor such as Dow. See id. § 8-48-101(1) (defining "employee" as any "lessee, sublessee, contractor, or subcontractor"). Such an interpretation is consistent with the legislature's clear intent in §§ 8-48-101(1) and (2) both to insure that a contractor's employees are covered under the worker's compensation system and to provide only one employee remedy under that system where the Act applies.
 
 
 40
 (5)
 
 
 41
 Finally with respect to the coverage of the Colorado Workmen's Compensation Act, the union plaintiffs argue that their claims are not barred by the exclusivity provisions of the Act because they are suing on their own behalf[8] and not just as representatives of the individual union members who were employed at Rocky Flats. Again, we turn to the wording of the Act in rejecting this contention. Colo.Rev.Stat. § 8-42-102 bars all causes of action "for and on account of such death of or personal injury to any such employee and accruing to any person." This language encompasses all of union plaintiffs' claims. These claims are all "for and on account of" injury to employee plaintiffs.
 
 
 42
 B. District court's conversion of motion to dismiss to a motion for summary judgment
 
 
 43
 Plaintiffs also contend that the district court converted defendants' motion to dismiss into a motion for summary judgment without giving proper notice to plaintiffs thereby committing reversible error. Fed.R.Civ.P. 12(b) states that, where a Rule 12(b)(6) motion raises matters outside the pleadings, it shall be treated as a motion for summary judgment subject to the requirements of Fed.R.Civ.P. 56. Rule 56(c) in turn requires that the opposing party be given ten days notice prior to hearing of the motion within which to file opposing affidavits. We have held that failure to provide adequate notice that a motion to dismiss is to be treated as a motion for summary judgment is reversible error. Franklin v. Oklahoma City Abstract & Title Co., 584 F.2d 964, 967 (10th Cir.1978).
 
 
 44
 Plaintiffs' contention that the district court committed reversible error in this case, however, fails on two grounds. First, under our cases, plaintiffs did have adequate notice under Rule 56(c). Plaintiffs were the first parties to point out to the district court that defendants' 12(b)(6) motion was in fact a motion for summary judgment. Further, plaintiffs submitted, and in fact were first to submit, materials outside of the pleadings to the court. As a result, plaintiffs have no legitimate claim that they lacked notice. See Nichols v. United States, 796 F.2d 361, 364 (10th Cir.1986) ("Where a party has responded in kind to [an] attempt to convert the motion, that party cannot later claim unfair surprise."); Prospero Assocs. v. Burroughs Corp., 714 F.2d 1022, 1025 (10th Cir.1983) (holding that, where the parties have stated in their briefs that a motion to dismiss should be considered as one for summary judgment and they have filed exhibits, the requirement of notice has been met).
 
 
 45
 Second, plaintiffs effectively waived any objections to the district court's conversion of the 12(b)(6) motion into a motion for summary judgment by responding in kind rather than objecting to the introduction of materials outside the pleadings. Nichols, 796 F.2d at 364 ("failure to give notice is not reversible error if a party does not attempt to exclude [the movant's] supporting documents"); Spence v. Latting, 512 F.2d 93, 97 (10th Cir.1975) (holding that notice requirement is waived where no objection is made at hearing), cert. denied, 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975).
 
 
 46
 C. District court's rejection of plaintiffs' request for discovery
 
 
 47
 Plaintiffs submitted a Fed.R.Civ.P. 56(f) affidavit setting forth their need for discovery before the district court proceeded on the motion for summary judgment. The court refused to grant discovery and plaintiff now objects to that ruling. We review the district court's denial of a request for discovery under Rule 56(f) for an abuse of discretion. Patty Precision v. Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1264 (10th Cir.1984).
 
 
 48
 Plaintiffs contended in their Rule 56(f) affidavit that discovery was needed concerning:
 
 
 49
 the existence of secret agreements relating to workers' compensation payments for radiation related injuries; the full extent and nature of any worker's compensation coverage for Rocky Flats workers; the manner in which workers' compensation claims were paid for radiation-related injuries; and exposure and medical records of Rocky Flats workers and information obtained by defendants regarding such.
 
 
 50
 Plaintiffs' Rule 56(f) Affidavit at 3.
 
 
 51
 In rejecting the request for discovery, the district court ruled that plaintiffs failed to show that discovery would produce any evidence relevant to the existence of worker's compensation under the Colorado Workmen's Compensation Act at Rocky Flats. Rockwell, 756 F.Supp. at 496-97. We find no abuse of discretion here.
 
 IV. Conclusion
 
 52
 The district court's grant of summary judgment for defendants is AFFIRMED.
 
 
 
 *
 The Honorable Elmo B. Hunter, Senior District Judge for the United States District Court for the Western District of Missouri, sitting by designation
 
 
 [1]
 Plaintiffs sued on their own behalf and as representatives of present and former Rocky Flats employees, but the district court never certified a class. See Building & Constr. Trades Dep't, AFL-CIO v. Rockwell Int'l Corp., 756 F.Supp. 492, 493 (D.Colo.1991)
 
 
 [2]
 The Colorado Supreme Court has not explicitly addressed whether a claim for medical monitoring is valid under Colorado law. In Cook v. Rockwell Int'l Corp., 755 F.Supp. 1468, 1477 (D.Colo.1991), however, the district court for the district of Colorado concluded that the Colorado Supreme Court would likely accept such a claim. As we have recognized in the past, the concept of medical monitoring is gaining wide acceptance. Daigle v. Shell Oil Co., 972 F.2d 1527, 1533 (10th Cir.1992); See e.g. In re Paoli R.R. Yard PCB Litigation, 916 F.2d 829, 852 (3d Cir.1990), cert. denied, 499 U.S. 961, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991); Hagerty v. L & L Marine Servs., Inc., 788 F.2d 315, 319 (5th Cir.1986); Ayers v. Township of Jackson, 106 N.J. 557, 525 A.2d 287, 312 (1987). The parties to this litigation do not dispute the existence of medical monitoring claims under state law
 
 
 [3]
 The Price-Anderson Act directs that "the substantive rules for decision in action[§ brought under the Act] shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [the Act]." 42 U.S.C. § 2014(hh)
 
 
 [4]
 Though defendants originally moved to dismiss the complaint for failure to state a claim upon which relief could be granted, their motion was treated by the district court as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(b) because the court was presented with matters outside the pleadings
 
 
 [5]
 Because plaintiffs' complaint was filed prior to the revision of the Colorado Workmen's Compensation Act, the 1990 revisions do not apply to this action. See Rockwell, 756 F.Supp. at 493
 
 
 [6]
 Plaintiffs contested ancillary issues such as defendants' premium structure and "secret side-agreements," but not the basic existence of worker's compensation coverage at Rocky Flats
 
 
 [7]
 The parties and the district court spend much time discussing the effects on Price-Anderson Act jurisdiction of defendants' claim that there is no "personal injury" in this case. The Price-Anderson Act grants federal jurisdiction only where there is a public liability action regarding a "nuclear incident" defined as a nuclear occurrence "causing ... bodily injury, sickness, disease, or death, or loss of or damage to property" as a result of exposure to radioactive and other toxic substances. 42 U.S.C. § 2014(q). Were we to find that plaintiffs' claims do not constitute "personal injury," it would raise questions as to federal jurisdiction. However, we need not address the issue in this case
 
 
 [8]
 Union plaintiffs assert that they have voluntarily undertaken to provide medical monitoring for their members not only to aid their members but also to ameliorate any financial burden to the union's health and welfare funds caused by future illness